CHARLES B. ORVIS *against* LOUIS J. JENNINGS AND GEORGE JONES.

SAME *against* CHARLES A. DANA.

(Decided May 1st, 1876.)

The courts of this State had before the Code, and still have, an inherent power to order bills of particulars in actions of tort, and may in a proper case order a bill of particulars of the evidence on which is founded the defense of justification in a libel suit.

An application for such a bill of particulars ought, however, to be denied, where the plaintiff only alleges that he does not know by what witnesses and by what evidence the defendants will endeavor to establish the defense, but does not show that he is ignorant of what is charged against him, nor that he cannot prepare for trial for want of knowledge as to what questions of fact will be litigated.

Where the answer in a libel suit simply alleged that the matter claimed to be libelous was true: *Held,* that as under it no evidence to justify could be offered, that this was ground for denying a motion for a bill of particulars of the evidence to be introduced in support of the answer.

APPEALS from orders of this court made at special term, one in the case of *Orvis* v. *Jennings and Jones,* by Judge JOSEPH F. DALY, and one made in the case of *Orvis* v. *Dana,* by Judge VAN BRUNT.

Both actions were for libel. In the case of *Orvis* v. *Jennings and Jones,* the complaint alleged that on November 25th, 1875, the defendants maliciously wrote, composed and published in "The New York Times" newspaper of which the defendant Jennings was editor, and the defendant Jones was publisher, the following article which it was alleged was false and defamatory, viz:

## "A PAIR OF SWINDLERS.

OPERATIONS OF TWO CONFIDENCE MEN IN THIS CITY—THEY RUN UP DEBTS TO A LARGE AMOUNT AND THEN ABSCOND.

"Charles B. Orvis and Dexter A. Reed, two dealers in hard woods, occupying rooms in the same building, No. 52 Center street, have absconded, leaving debts behind them aggregating from $75,000 to $100,000. Orvis is an old swindler. A few years ago he had an office in King street, Toronto, Canada, where he ostensibly dealt in Kansas lands. His real business, however, was to advertise in the daily papers for a clerk with $700 or $800 cash. He employed all persons offering, at high salaries, and gave them his own worthless notes for their money. When the first of the month came around he was in Chicago, where he played a similar game until that city became too warm for him, and he came to New York. His first venture here was in the hotel line, at Eighth street and Broadway. He failed, with $20,000 in judgments recorded against him. He next set up as a private banker in the Stuyvesant building, but his only success here was a marriage which he contracted with a lady of respectable family. After his marriage he went into the hard wood business on commission. He received a number of consignments from the West, but was so slow in making his returns that his principals made an investigation, the result of which has been his absconding. Reed came hither from one

of the most respectable Boston houses in the trade. He was esteemed an honest and upright young man, and enjoyed a first-class credit until he met Orvis, who, it is believed, led him astray. Reed swindled his creditors in precisely the same manner that Orvis did his, by selling their goods and pocketing the proceeds. They also divided some $50,000 by means of another swindle which they perpetrated in partnership. Reed, whose credit was good, indorsed notes made by Orvis, and the latter sold them. Orvis told a friend a short time ago that he had sent his wife and family to San Francisco, and it is believed that the pair are now in that city. No effort has thus far been made to bring them to punishment."

The defendants by their answer admitted the publication of the article, and as a first defense denied that it was false or defamatory, or published with malice, and denied that the plaintiff had been damaged.

As a second defense the defendants alleged on information and belief :

" I. That the matter of which the plaintiff complains was and is, so far as it relates to the plaintiff, true of him; and in particular that from about August, 1875, to about October, 1875, the plaintiff carried on business as a commission dealer in hard woods, at No. 136 Centre street, in the city of New York, where he gained the confidence of a number of business men, and thereby obtained trust and credit, and incurred debts to a large amount, chiefly upon promissory notes or bills of exchange negotiated to various persons, whose names are at present unknown to the defendants; and thereupon, and on or about October 22d, 1875, the plaintiff absconded from his said place of business, leaving debts behind him which amounted to $30,000, or more, and which, with those of Dexter A. Reed, who occupied rooms in the same building, and disappeared at about the same time, aggregated over $75,000. That among the debts thus contracted and left unpaid were the following, namely: one of $1,000 and one of $950 upon negotiable paper to which the plaintiff and said Dexter A. Reed were parties, upon which goods had been obtained from Thomas Remington, of No. 87 Thomas street, in the city of New York; and one of

$1,500 for lumber received from J. N. Boyle, M. L. Cox and Frank Landers, composing the firm of Boyle, Cox & Co., of Indianapolis, Indiana.

" II. That the plaintiff had previously cheated and defrauded other persons grossly or with deliberate artifice, or had attempted so to do; and, in particular, that in or about the year 1869, or previous to the year 1870, the plaintiff had an office in King street, in Toronto, in Canada, where he ostensibly dealt in Kansas lands, and that, under color of an ostensible business, he advertised in the newspapers for a clerk with money to entrust to his employer, and engaged such persons as offered, or attempted so to do, by the inducement of large salaries, and whose money the plaintiff received or attempted to obtain in exchange · for his own worthless notes or written obligations therefor; and, in particular, that the plaintiff thus attempted to employ one Gregory, who was then in the employ of the firm known as Messrs. Dodgson, Shields & Co. That subsequently, in the city of Chicago, in the State of Illinois, the plaintiff defrauded other persons or attempted so to do, in like manner, and in the pretended sale of lands in the State of Kansas: and, in particular, that the plaintiff so defrauded or attempted to defraud one Bradshaw; and that, when the plaintiff was in danger of being exposed or punished, and was indicted, on complaint of said Bradshaw, for these frauds there, he came away from Chicago.

" III. That subsequently, and in or about the year 1871 or 1872, the plaintiff was, or pretended to be, engaged in business as a private banker in the Stuyvesant building, at or near the corner of Broadway and Astor Place, in the city of New York, and while undertaking said business, contracted marriage.

" IV. That subsequently, and in or about the year 1873, the plaintiff was, or pretended to be, engaged in the business of keeper of a hotel called the Astor Place Hotel, or the La Pierre House, in the city of New York; and that, in or about the year 1874, the plaintiff failed or abandoned said business, and that there were then $20,000 in judgments recorded against him, namely [setting out certain judgments which it was alleged were unsatisfied of record].

" V. That subsequently, and as hereinbefore stated, the

plaintiff was, or pretended to be, engaged in business as commission dealer in hard woods, at No. 136 Centre street, in the city of New York, and solicited and received consignments of hard wood from Indianapolis, in the State of Indiana, and other places in the Western States, for sale, and negligently or wrongfully failed or delayed to account to the consignors therefor; and that, upon investigation being made by them, the plaintiff absconded as aforesaid, converting part or all of the proceeds of said consignments to his own use.

" VI. That on or about September, 1875, the plaintiff and one Dexter A. Reed, united in raising money by means of negotiable promissory notes or bills of exchange, to which the plaintiff and said Dexter A. Reed were parties, and which were negotiated by the plaintiff, when he well knew that he was insolvent, and that said notes would not be paid ; and that said promissory notes or bills of exchange to a large amount, were so negotiated to various persons whose names are at present unknown to the defendants; and that a part of the proceeds thereof was received by the plaintiff.  That among the promissory notes or bills of exchange thus negotiated were two for $750 each, which purported to be, but were not in fact, made by Messrs. Levy Brothers, of No. 103 Avenue B, of the city of New York, which were passed by the plaintiff and said Dexter A. Reed to Messrs. Boyle, Cox & Co., of Indianapolis, in the State of Indiana, as the genuine paper of said Levy Brothers, in payment of indebtedness for lumber consigned to them.

" VII. That the plaintiff and said Dexter A. Reed acted in confederacy in thus incurring debts and absconding, and in thus raising money and credit upon worthless notes and bills of exchange, and that the circumstances of their incurring such debts, and negotiating said notes or bills of exchange, were such as would have afforded good ground for an effort to hold the plaintiff to bail, and render him liable to execution against the person.

" VIII. That while the plaintiff was soliciting and obtaining consignments of merchandise as aforesaid, he was and still is under indictment for forgery.  That on or about December 12th, 1873, twenty-five several indictments which had been

duly found by the grand jury for the city and county of New York, against the plaintiff herein, were duly presented to the Court of General Sessions for the city of New York, and there filed; and that said indictments severally charged the plaintiff herein with the crime of forgery, as follows, namely: That the plaintiff feloniously did falsely make, forge and counterfeit, and cause and procure to be falsely made, forged and counterfeited, and willingly act and assist in the false making, forging and counterfeiting, a certain instrument and writing of the kind commonly called first mortgage bonds, purporting to have been issued by a certain corporation called 'The Buffalo, New York and Erie Railroad Company,' with intent to injure and defraud one George B. Ripley and divers other persons; and that the plaintiff feloniously did falsely make, forge and counterfeit, and willingly act and assist in the false making, forging and counterfeiting the instrument and writing aforesaid, which said false, forged and counterfeited bond, purported to be sealed with the corporate seal of the said corporation, with intent to injure and defraud said George B. Ripley and divers other persons; and that the plaintiff, feloniously and falsely did utter and publish as true, with intent to injure and defraud said George B. Ripley and others, the certain instruments and writings aforesaid, well knowing the same to be false, forged and counterfeited. And that the plaintiff obtained credit from the persons hereinbefore named, and others unknown to the defendants, when said persons were in ignorance of said charges, and were induced to give the plaintiff credit, and trust him with their merchandise, in confidence that the plaintiff was in good credit, standing and reputation."

For a third defense, the defendants also alleged on information and belief:

" I. That the substance of the charge against the plaintiff contained in the matter complained of, namely, that the plaintiff was a confidence man and swindler, was and is true. And in particular, as stated in the first, fourth, fifth, sixth and seventh paragraphs of the second defense herein, which the defendants severally repeat as a part of this defense; and further, that the plaintiff, in or about the year 1873, procured an introduction

to George B. Ripley as a person wishing to borrow money on collateral security, and at various times between the 6th day of June, 1873, and the 1st day of August, 1873, obtained altogether $19,995 from said George B. Ripley, upon a pledge of first mortgage bonds of the Buffalo, New York and Erie Railroad Company, which were forged, and known by the plaintiff so to be.

"II. That at the time of the publication of the matter complained of, the plaintiff was insolvent, and that there were judgments to the amount of $28,820 32, recorded in the office of the clerk of the city and county of New York, outstanding and unsatisfied against him ; that he was utterly irresponsible ; that he was under indictment in Chicago for bogus operations in Kansas lands, on the complaint of one Bradshaw, and under twenty-five indictments for forgery in the city of New York, on the complaint of George B. Ripley ; and that any attempt by him to obtain credit from persons ignorant of these facts would have been a gross fraud on his part."

The plaintiff moved for a bill of particulars, on an affidavit stating that he was ignorant of the particulars and facts which the defendants expected to prove, and was advised, and believed that it was necessary and material to his controverting the truth of the statements made by the defendants, that they should render him a bill of particulars thereof.

In opposition to the motion, the defendants jointly made an affidavit in which, in addition to the ordinary affidavit of merits, they swore :

"I. That the charge published in the New York Times, on November 20th, 1875, of which the plaintiff complains, and the facts set forth in justification thereof, were communicated to the writer of the said article by some member or employee of the firm of Dun, Barlow & Co., of the city of New York, a mercantile agency employed by numerous highly respectable merchants, bankers, and others, who in the course of their business are constantly called upon to give credit to persons unknown to them. That the trustworthy character of the said firm, and of the information generally received from them, and the notoriously bad character of the plaintiff wherever he has

been known, gave confidence of the truth of the said facts and charges, which were published without malicious intent, and simply for the purpose of putting the subscribers and readers of the New York Times upon their guard against being defrauded by the plaintiff.

" II. That the defendants have general information that the charge published concerning the plaintiff, that he was a confidence man and a swindler, and the particular instances of fraud or swindling mentioned in said article are true; that many of the acts of the plaintiff referred to occurred at remote places, and other acts in or near the city of New York; and that all material parts of the article relate to frauds which were done in a manner intended to be concealed from the knowledge of every one; and that a particular knowledge of the facts by which defendants may prove the truth of the charge is difficult of attainment by defendants, by reason of such remoteness and secrecy; and that as deponents verily believe all said matters are within the personal knowledge of plaintiff. That defendants have been and now are collecting the evidence of the particular facts and circumstances by which they intend to prove their defense; and that to disclose the same to the plaintiff more fully than it has been disclosed by their answer, or may be by any supplemental or amended answer which, upon leave of court, they may be advised to make, would prejudice their defense. That as the defendants are advised and believe, substantial justice can be done at the trial, without the aid of the information sought by the plaintiff, and without narrowing the issue formed by the pleadings."

After argument before him at special term, Judge JOSEPH F. DALY ordered:

" That the defendants furnish to the plaintiff a bill of particulars of the defendants' claim in respect to who the business men were whose confidence, the defendants mean to allege, the plaintiff gained while in business in Centre street; and in respect to what other persons the defendants mean to allege in paragraph II of the second defense, set forth in their answer, that the plaintiff attempted to cheat, or did cheat, with artifice; and in respect to what newspapers the defendants mean to al-

lege that the plaintiff advertised in for a clerk in Toronto and in Chicago, and in respect to the names of the persons whom the defendants mean to allege that the plaintiff engaged or attempted to engage as clerks; and in respect to what dealings with Bradshaw, and indictment of the plaintiff in Chicago, the defendants mean to allege; and in respect to whom the defendants mean to allege that the plaintiff received consignments from, and failed to account to therefor, while in Centre street; and in respect to the nature of the transaction by which, and the parties with whom, and the place where, the defendants mean to allege the consummation of the alleged swindle of $50,000 was perpetrated."

In the case of *Orvis* v. *Dana*, the complaint was for composing and publishing, at the city of New York, in "The Sun" newspaper, of which it was alleged the defendant was the editor and publisher, an alleged libelous article similar to the one published in the Times.

The answer in that case admitted that the publication had been made, and that the defendant was the editor of the Sun at the time of the publication, but denied that the defendant had composed the article, or was the publisher of the paper, and alleged that it was published by the Sun Printing and Publishing Company.

The answer also alleged, on information and belief, that the matter published, so far as it related to the plaintiff, was true. It also alleged that the general character of the plaintiff at and prior to the time of the publication, was bad, and that the defendant would give this in evidence on the trial in mitigation of damages. It also alleged that prior to the commencement of the action, twenty-five indictments had been found against the plaintiff by the grand jury of the city and county of New York, each for forgery in the third degree, and that under them the plaintiff had been arrested and held to bail, and that the indictments were still pending.

The plaintiff moved for a bill of particulars on an affidavit similar to the one used by him in the case of *Orvis* v. *Jennings*. No affidavit was presented by the defendant in opposition. The motion was argued before Judge Van Brunt at special term,

and after argument he delivered an opinion in which he arrived at the conclusion that the case of *Tilton* v. *Beecher* (59 N. Y. 176), did not decide that the defendant, in every case, could be compelled to furnish a bill of particulars, and that such was not the practice before the Code, and that § 158 of the Code did not authorize the court to order the defendant to furnish a bill of particulars of his defense in an action for libel; but on account of the previous decision to the contrary, made by Judge Joseph F. Daly in the case of *Orvis* v. *Jennings*, he ordered a bill of particulars to be furnished similar to the one ordered in that case.

*Austin Abbott*, for the appellants Jenning and Jones.

*Willard Bartlett*, for appellant Dana.

*H. C. Gardiner* and *Silas M. Stilwell, Jr.*, for respondent in both cases.

VAN HOESEN, J.—On the application of the plaintiff, Judge J. F. Daly, at special term, ordered the defendants Jennings and Jones to give a bill of particulars of some of the matters pleaded by them in justification of an alleged libel upon the plaintiff. Afterwards, upon the application of the plaintiff, Judge Van Brunt, at special term, ordered the defendant Dana to give to the plaintiff a similar bill of particulars.

The defendant Dana appealed from the order of Judge Van Brunt; and the plaintiff and the defendants Jones and Jennings also appealed from the order of Judge Daly. The appeals were argued at the same time, and two questions were discussed upon the argument, and are now to be determined.

*First.* Has the court power, in an action for libel, to require the defendant to give to the plaintiff a bill of particulars of the matters pleaded in justification ?

*Secondly.* If the court possesses such power, did the plaintiff in these cases present good reasons for its exercise ?

The plaintiff complains that the defendants, in both actions, published concerning him the same libelous statement. That statement is general and vague. It alleges that the plaintiff is

an old swindler, and refers, in a loose way, to some transactions of a questionable character in which he was engaged at different places in former years. The defendant Dana attempts to justify by simply alleging that the charges of the statement are true. The defendants Jones and Jennings, not content with the general allegation of the truth of the charges, plead with fullness and circumstantiality the facts by which they expect to establish the truth of the imputations upon the plaintiff.

There is no precedent, in this State, for a bill of particulars in a libel suit. In all probability, the plaintiff would not have thought of asking particulars in these cases, but for the decision in *Tilton* v. *Beecher* (59 N. Y. 176). Because the Court of Appeals decided in that case that it was in the power of a court of original jurisdiction to order the plaintiff to furnish a bill of particulars in an action for criminal conversation, it seems to be supposed that hereafter a bill of particulars is to be as much a matter of course in an action of tort, as it has hitherto been in an ordinary action on a book account. If *Tilton* v. *Beecher* had never been decided, there would still be abundant authority for holding that it is a necessary part of the powers of every court of general jurisdiction to order bills of particulars whenever a party is unable to ascertain from the general statements composing the pleadings of his opponent, what particular questions of fact he must prepare himself to try.

It is true that in New York the courts have never ordered bills of particulars in any actions of tort, except trover and ejectment, but in England and in Ireland, as well as in several States of the American Union, courts whose inherent powers are the same as those of our own courts, have ordered bills of particulars in trespass, in actions for nuisance, and in actions for libel.

In *Jones* v. *Bewicke* (5 L. R. C. P. p. 32), which was an action for libel, the defendant, who had charged the plaintiff with perjury, and who pleaded, by way of justification, that the charge was true, was compelled to give particulars of the matters he relied on to justify the libel.

In *Wren* v. *Weild* (4 L. R. Q. B. p. 213), the defendant, who had stated to persons who had bought certain machines of the plaintiff, that such machines were an infringement of his

patent, was ordered by the Queen's Bench to furnish to the plaintiff a bill of particulars specifying in what respects the machines infringed his patent.

In *Wood* v. *Jones* (1 Fost. & F. p. 301), the plaintiff in an action for slander, was compelled to furnish the names of the persons to whom the defendant had communicated the slander, and whose patronage the plaintiff had lost in consequence of the aspersions.

In *Slator* v. *Slator* (8 Law Times Rep. N. S. p. 856), the plaintiff was ordered to give particulars of the occasions on which the defendant had uttered the slander. The plaintiff's counsel stated, in the course of his argument, that he had searched the books from Croke Jac. downward, without finding a precedent in England for the application.

In *Lagan* v. *Gibson* (Irish Exchequer, Nov. 15, 1875, reported in vol. 9 Irish Reports, C. L. series, p. 507), which was an action for seduction, the defendant applied for a bill of particulars, and the Chief Baron, though denying the application, used the following language on the subject of the power of the court to order particulars: " There is no doubt that the court has an inherent jurisdiction to order particulars in all cases in which it is satisfied by affidavit that either for the purpose of pleading, or of defense at the trial, the plaintiff should more clearly define his cause of action. The application, however, is not granted of course ; special grounds and circumstances must be proved, to show the necessity for more specific information."

The case *Early* v. *Smith* (Irish Law Reports New Series vol. 12, appendix p. 35), establishing the power of the court to order particulars, was mentioned with approval by the Court of Appeals in *Tilton* v. *Beecher* (*supra*).

In *True* v. *Plumley* (36 Maine, 466), and in *Clark* v. *Munsell* (6 Metc. 373), the plaintiffs were compelled to furnish particulars of the facts constituting a right of action for slander.

Whilst there is no doubt that the courts I have mentioned have never until recently exercised the power, it cannot now be questioned that they have, even in actions of tort, " an inherent jurisdiction " to quote the words of Chief Baron Palles, " to order particulars."

It is contended, however, by the counsel for the defendants, that the courts of New York have not the power to order particulars that is possessed by the courts in the United Kingdom, because the Code, which was intended as a revision of, or as a substitute for, the old common-law practice, makes no provision for bills of particulars, except where an account is pleaded, or where the *claim* of a party is lacking in definiteness. The word *claim* has, it is argued, a signification well settled and thoroughly understood. It implies, we are told, a demand for affirmative relief, and, for the purpose of showing such to be its meaning, various definitions of the word have been collated from the law dictionaries of Jacob, Bouvier, and Burrill. All the definitions agree that a claim is a demand for a thing, the ownership of which, or an interest in which, is in the claimant, but the possession of which is wrongfully withheld by another. It is singular that no one of the definitions fairly covers the demand made by Tilton against Beecher. It would be doing violence to language to say that the damages which Tilton sought were property which he owned, and which Beecher wrongfully withheld. The Court of Appeals, when they declared it to be within the power of the City Court of Brooklyn to order Tilton to furnish particulars, must have regarded the word *claim*, in § 158, as having a broader signification than the law dictionaries ascribe to it. In common parlance a *claim* means an assertion, a pretension. When *claim* is used as a verb, many respectable writers seem to regard it as a synonym for state, urge, insist, or assert. Thus, Judge Van Brunt, in his very able opinion at special term, speaks of actions in which "the indebtedness is *claimed* to have arisen." And Judge Rapallo, in his opinion in *Tilton* v. *Beecher*, says, "It is *claimed* that an important element in the case consists of confessions;" again he says, "he denies that the acts charged were ever committed, but *claims* that for the purpose of preparing his defense, &c., &c.;" again he says, "the transactions out of which the indebtedness is *claimed* to have arisen," &c.

It is very plain that both Judge Rapallo and Judge Van Brunt used the word in its popular sense, without associating with it the idea of an affirmative demand; and that when they

said " an indebtedness is *claimed* to have arisen," they meant merely that the indebtedness was *alleged* or *stated* to have arisen. I am aware that such a use of *claim* is not strictly correct, and that the best authorities condemn it; yet, that it is the ordinary use of the word, admits of little question. Bad as the misuse may be, it is no worse than the misuse in the English courts of the word *contention*, which is employed in Westminster Hall as a synonym for point, or proposition. I think that *claim*, in § 158, must be taken to mean case, and that the legislature intended to embrace in the word all causes of action, and all grounds of defense; the pleaded stories of both parties; pleas of confession and avoidance, no less than complaints and counter-claims. A bill of particulars may be ordered, says § 158, *in all cases*, and *from either party*. It evidently was the intention to confer upon the courts the most absolute and sweeping power to order particulars. It would have been easy for the legislature, if their design had been not to allow particulars, except of matters set out in complaints, or in counterclaims, to make the language of § 158 express that intent. The words *all cases* include actions of torts, suits in equity, in fact every imaginable description of action. *Either party* may in *all cases* be compelled to furnish particulars. Where language so comprehensive is used, and where discretion so unlimited is plainly confided to the courts, we ought not to be ingenious in discovering ways to thwart the legislative will. It would be wrong to give the word claim a narrow and technical meaning, and then to let it master the rest of the sentence, and control its construction.

But, giving to *claim* the narrow interpretation insisted on by the counsel for the defendant, and conceding that § 158 only allows the ordering of particulars of affirmative demands, I think that § 469 of the Code gives ample authority for bills of particulars in cases like the present. " That section," says Judge Rapallo, in *Tilton* v. *Beecher*, " would probably suffice to preserve the authority of the court to order particulars in all cases before accustomed." It continues in force all the old rules and practice of the courts not inconsistent with the Code. The old system of pleading was abolished. The old practice was re-

tained, where not inconsistent with the Code. What is there inconsistent with the Code in permitting the court to order a bill of particulars in a libel suit? The counsel for the defendant says that § 158 was intended as a substitute for the old law on the subject of bills of particulars. That is begging the question. Wherein is § 158 of greater force than § 469? The old law permitted a bill of particulars in an action of trover, and in ejectment. When the Code was first enacted, the only section on the subject of bills of particulars provided merely that a bill of particulars might be ordered of an account of more than twenty items. Will it be seriously contended that the adoption of that section ousted the courts of their power to order particulars in actions of trover and of ejectment? Certainly not. The old practice remained in force, being preserved by § 469.

An intent on the part of the legislature to deprive the courts of an essential branch of their powers, of a part of their "inherent jurisdiction," is not to be presumed, without clear evidence of such intent.

It is of no force to say that the granting of bills of particulars in actions for libel was not a part of the accustomed practice of our courts. The Court of Appeals disposed of that objection when they established the power of courts of original jurisdiction to order particulars in an action for criminal conversation. The powers of a court do not depend upon the frequency with which the exercise of them is invoked.

I think, therefore, that the power to order particulars to be furnished by the defendant in a libel suit, is beyond dispute.

We come now to the question whether, in these cases, we ought to exercise that power. I am clearly of the opinion that we should not.

It was said by Chief Baron Palles, in *Lagan* v. *Gibson* (*supra*), that "particulars are always useful to the defendant; they limit the occasions in reference to which the plaintiff is at liberty to apply evidence, and consequently restrict the range of proof necessary to the defendant. But this restriction does not *per se* constitute a necessity for particulars within the meaning of the rule."

In *Horlock* v. *Lediard* (10 M. & W. 677), Baron Parke

said : " There must be some special ground alleged, otherwise, in every case of trespass, it would be a step in the cause to apply for a bill of particulars, on the affidavit of the defendant,, who would never know what the grievances complained of were."

In *Echlin* v. *Brady* (17 Irish Jurist, 188), Chief Justice Lefroy said : " The principle applicable to such an application is that wise precaution which is given in the cases cited, that the party applying to oblige his adversary to make an exposure of his case, must make that application founded upon an oath that he does not believe, and cannot form an opinion as to the matters with which he is charged ; that the charge is so vague that he does not know what he is charged with."

In his affidavit in the action against Jones and Jennings, the plaintiff says no more than this : " He is ignorant of the particulars and facts which defendants expect to prove."

In his affidavit in the action against Dana, the plaintiff merely says, that " he has no knowledge, information or belief as to the persons, times or places of the facts by which the defendant proposes to establish the material averments in his answer."

Tested by the rules laid down in the cases I have cited, these allegations are utterly insufficient to entitle the plaintiff to a bill of particulars. They merely amount to a statement that the plaintiff does not know by what witnesses and by what evidence the defendants will endeavor to establish their defense. He does not say that he does not know what he is charged with, nor does he state that he cannot prepare for trial for want of knowledge as to what questions of fact will be litigated, but he seeks to compel the defendants to give him an interior view of their case. In the language of Chief Justice Robertson (1 Abb. N. S. 238), " the law has always considered sacred the rights of both parties to keep secret their preparations and means of attack and defense."

It can seldom be necessary, under our system of pleading and practice, to compel either the plaintiff or the defendant to furnish particulars in an action for libel. In England, since the enactment of the common law procedure act, it has been

allowable to plead justification of a libel in general terms. In consequence of that relaxation of the old rules of pleading, it has there become necessary to make bills of particulars supply those details of justification which were formerly an essential part of the justificatory plea. Hence, we see particulars ordered in *Jones* v. *Bewicke, supra* (Townshend on Slander, 2d ed. sec. 355, note 2). In New York, the strict rules of the common law respecting the pleading of justification remain in full force (*Wachter* v. *Quenzer*, 29 N. Y. 553).

If the defendant fails to plead a complete justification, he will not be permitted to prove his defense. The plaintiff has his election either to move to make the answer more definite and certain, or to lie by, and object on the trial to the reception of any evidence offered to support the defective plea (*Wachter* v. *Quenzer*, 29 N. Y. 547; *Spooner* v. *Keeler*, 51 N. Y. 527; *Tilson* v. *Clark*, 45 Barb. 178).

In view of this state of the law, it is difficult to understand why the plaintiff should apply for a bill of particulars. As the pleadings stand, the defendant Dana cannot, upon the trial, offer any evidence whatever by way of justification. The charges in the alleged libel are vague and general, and all he has pleaded in justification is the general averment that the charges are true. Not a single specific fact is stated in the answer. If the defects of the answer could be or should be supplied by a bill of particulars, the plaintiff would actually be building up Dana's defense. "A bill of particulars is only necessary when justice demands that a party should be apprised of matters with greater particularity than is required by the rules of pleading."

It certainly is not the office of a bill of particulars to make a bad answer good. The rules of pleading require that a justification of a general imputation upon the plaintiff's character should state specific facts, showing in what manner and in what instances he has misconducted himself; and it must extend to every part of the libel (Chitty's Pleadings, vol. 1, marg. p. 523).

Thus it appears that the common-law rules of pleading, which in this respect we have retained, require in the answer the same detailed and specific information that a perfect bill of of particulars would contain.

Moreover, we must not lose sight of the fact that a bill of particulars is no part of the record (*Kreiss* v. *Seligman,* 8 Barb. 440). A justification should be part of the record (*Honess* v. *Stubbs,* 7 C. B. N. S. p. 555).

In closing these observations, it is proper to inquire, what greater necessity has the plaintiff for a bill of particulars than any other plaintiff in a libel suit in the last three hundred years has had? In England, until a general form of justification was permitted, no plaintiff ever applied for or obtained a bill of particulars. Had the rules of pleading remained unchanged, there would not be a solitary precedent for the plaintiff's application. We have not changed the ancient rules. The reasons which caused the ordering of particulars in libel suits in England have no application and no force here.

Affirming the power of the court to order a bill of particulars to be furnished by either party in any action, I am of the opinion that for the reasons I have given, the plaintiff's applications for bills of particulars ought to have been denied.

The orders of Judge J. F. DALY and Judge VAN BRUNT for bills of particulars should be reversed, with ten dollars costs and the disbursements to the defendants Jones and Jennings, and ten dollars costs and the disbursements to the defendant Dana.

CHARLES P. DALY, Ch. J., concurred.

Ordered accordingly.