EDYTHE B. WALLACE, Appellant, *v.* FIRST TRUST COMPANY OF ALBANY, NEW YORK, JAMES H. WALLACE, JOHN G. WALLACE, WILLIAM G. WALLACE and MARY TRACY WALLACE, Now MARY TRACY GALLAGHER, Respondents.

Third Department, May 14, 1937.

*H. E. Blodgett* [*Howard Murrin* of counsel], for the appellant.

*Cooper, Erving &, Savage* [*Edward S. Rooney* of counsel], for the respondent First Trust Company of Albany, New York.

*Charles E. Brennan,* for the respondents Wallace and Gallagher.

PER CURIAM. Appeal from a decree of the Trial Term of the Supreme Court, entered in the office of the clerk of Albany county on the 26th day of September, 1936, dismissing the complaint.

Joseph F. Wallace was the husband of the plaintiff, was the manager of a theatre, and was the owner of six life insurance policies on his own life, aggregating $25,000 face value, in each of which one or another of his three brothers and a sister was named as beneficiary. Joseph and his wife had no children. James H. Wallace, a brother of Joseph, was a vice-president, the trust officer, and in exclusive control of the trust department of the corporate defendant First Trust Company of Albany. The relations between James and Joseph were brotherly and confidential. Joseph was told by someone that a trust fund could be established from his insurance policies, but was entirely unfamiliar with such a practice, and unacquainted with the course, method and elements necessary to effectuate such a trust, or with the provisions that might be incorporated therein. James was. Accordingly, he went to his brother James in the latter's office in the trust company, and sought

the information he needed, and relied on the advice and instructions received. At this time Joseph's said insurance policies were, and for ten years preceding had been, in the possession of James, and were kept by him in his safe deposit box in the trust company. As a result of conferences between these brothers in the office of James, it was concluded between them that Joseph would erect a trust with the insurance policies and their proceeds; that the trust company should be trustee and that the income from the proceeds of the policies, on Joseph's death, should be payable to his widow, this plaintiff, during her life. In case of her illness, principal could be used for her benefit, and upon her death the remaining corpus should be divided among the surviving brothers and sister, or their children, if any. James testified as to one of the visits of Joseph: "At that time he sat down and he spent about the same time with me, and we drew up a proposed agreement, to which I have already testified." And at that time the six insurance policies were on the desk where they were writing.

These facts appear from the testimony of James, as does also the instruction to Joseph to go home and talk it over with his wife, which Joseph did. He told his wife at dinner, as the latter stated on the trial, practically the same story thus far to which James testified. This was corroborated by the witness Bernard. The plaintiff also gave evidence that she heard James tell Joseph on the telephone, later related to her orally by Joseph, that the agreement was ready to be signed the next morning. And the following evening, as she stated, Joseph told her he had been at the trust company and signed the trust agreement, that it was all "fixed up," and that he was glad to get it off his mind; also that James told Joseph it was not necessary to have the names of the beneficiaries changed in the policies or to deliver the policies to the bank. The conversations between Joseph and the plaintiff were admissible in evidence, under the instructions of James to Joseph, as testified to by James, without objection on the part of the other defendants. (*Ward* v. *New York Life Ins. Co.*, 225 N. Y. 314, 321.)

After the conference at which the writing was drawn up, Joseph took his policies from his brother, and also the writing, and placed them in a safe deposit box which he maintained at the theatre. The policies were found there three months later, after his death. Also there is evidence that, fastened in a bundle with these policies, was found a "blue-covered" paper, and that James took all of these away from the theatre, at the same time saying to the widow, in substance, "You are not interested in these." Later, proofs of loss were made by the respective brothers and sister, and the proceeds of the policies collected by them from the insurance companies.

James, however, testified that the agreement was not completed, that it was skeleton in form, was taken away from his office by Joseph, with the understanding that the latter would talk over the matter with his wife, and return and execute it; and that he never did so. James also denies the telephone conversation that the trust agreement was ready for execution, that he told Joseph it was unnecessary to change the beneficiaries, or deliver the policies, and also he denies he took the policies from the theatre, or that there was there with the policies a blue-covered paper.

The court submitted to the jury two questions which they answered, and in which they said that the trust agreement was executed, taking in the policies in dispute, that the defendant trust company was named trustee, and that the trust company accepted the trust.

Equity holds that as done which ought to be done. A fiduciary relation existed between James and Joseph, and clearly James was the dominant personality in the circumstances. A failure of the trust would inure to his benefit, and that of his brothers and sister. The proof offered by the defendants did not rise to the frank, full and complete disclosure required by the rule in such cases. In the interest of justice the decree should be reversed on the law and facts and a new trial granted.

HILL, P. J., McNAMEE, CRAPSER, BLISS and HEFFERNAN, JJ., concur.

In the interest of justice the decree is reversed, on the law and facts, and a new trial granted, with costs to the appellant.

The court reverses findings of fact, denominated " Defendants' Proposed Findings of Fact," numbered 8, 9, 11, 18, 19, 20, and all findings of fact denominated conclusions of law.