In the Matter of the Estate of MARY HEIM, Deceased.

Surrogate's Court, Kings County, March 16, 1938.

*Oliver E. Davis* [*Albert S. Krautheimer* of counsel], for Lulu Lang, as administratrix, etc., petitioner.

*Nicholas Dietz*, for the German Evangelical Aid Society of Brooklyn, respondent.

WINGATE, S. On July 4, 1934, Mary Heim was introduced to the German Evangelical Aid Society by her pastor and expressed a desire to enter its home. She was then fifty-nine years of age, but in view of her previous laborious existence wished to retire. An application form was given her which she duly completed and transmitted to the board of managers of the home a week later. The matter came up for consideration in September, and after a report had been received by the investigators appointed for the purpose, the board voted to accept the application. She was admitted to the home on November 16, 1934, and resided there until on or about December 14, 1935, when she was struck by an automobile while attempting to cross the street about a block from the home, and died as a result of her injuries.

The application for admission which she duly executed, and on the faith of which her admission was secured, read in part: " I hereby further agree to pay an admission fee of $1,500 and $500 for funeral

expenses, and to convey, transfer, assign and deliver all my property and estate to said society upon admission, and at the same time to execute a Will making said society my sole beneficiary, and I agree to execute any and all papers necessary for that purpose."

She paid the specified $1,500 but did not turn over the remaining $500. No express conveyance of her assets or effects was ever made by her although the record indicates that the obligation so to do was called to her attention a few days before her death and that she promised to attend to it.

At the time of her death, she had in her possession two savings bank books showing aggregate balances of about $800, a bond and mortgage for $3,000, a fur coat, a radio set and deeds for certain lots. These naturally came into the possession of the society upon her death, and are the subject matter of this discovery proceeding.

The petitioner, who was a sister of the decedent, secured letters of administration on her personal estate on April 24, 1936. In the early part of 1937 the society caused a paper to be served on the administratrix, which recited parts of the foregoing quotation from the application for admission to the Home, and gave notice that the society " claims all of the assets of the estate of Mary Heim by virtue of an assignment thereof in writing in law and in equity."

No assertion in any way attacking the volition of the decedent in the execution of the application, or her competency at that or any other time, has been made.

The syllogism for recovery advanced by the petitioner is predicated on four alternative premises, *first*, that having presented a " claim " for the assets here in question, the respondent is inhibited by the provisions of section 211 of the Surrogate's Court Act from asserting in its answer to this proceeding, the facts upon which it bases its right to a retention as against the petitioner of the items of property sought to be recovered from it; *second*, that the by-laws of the home provided that an applicant for admission should be sixty years of age, whereas the decedent, when admitted was only fifty-nine, in consequence of which, it is asserted, the contract between the society and the decedent was *ultra vires* and void; *third*, that the rules of the home provided that inmates " are allowed to go out on Tuesdays; " that the decedent was permitted to go out on a day other than Tuesday, on which excursion she met her death, wherefore the home had breached its contract and is not entitled to the assets which the decedent agreed should be conveyed to it; and *fourth*, that by not insisting on the execution of the assignment and will provided for in the application, the society waived its rights in this regard. It would be difficult to imagine grounds

advanced for a recovery more sophistical or legalistically technical and devoid of substantial merit, than those enumerated.

It is entirely true that section 211 of the Surrogate's Court Act provides that a claim shall be tried upon the accounting unless the claimant shall institute an action in a court of general jurisdiction " for the recovery thereof " within three months after its rejection, but even were the document which the respondent served on the petitioner to be deemed a " claim " within the connotation of this section, which it may not, the obvious purpose of the enactment is not subject to perversion by any such meritless technicality as is urged on behalf of the petitioner.

There is no rule of law or morals which prohibits a person who is in lawful possession of property and has invoked police aid for its protection, from combatting an attempt to wrest it from him prior to the time of arrival of the authorities. The present situapon, is analogous, if not similar.

In the ordinary case, one holding a claim against an estate possesses a right to a jury trial which may not be demanded in a proceeding for accounting. (*Matter of Boyle,* 242 N. Y. 342, 345; *Matter of Beare,* [FOLEY, S.] 122 Misc. 519, 520; affd., 214 App. Div. 723; *Matter of Smith,* 143 Misc. 653; *Matter of Meyer,* 148 id. 901, 902; *Matter of Doherty,* 155 id. 396, 397.) It follows that the primary effect of the failure to institute an action on the claim within the specified period, is a consent to the determination of the rights of the claimant by the court, without a jury. To avoid peacemeal litigations respecting the fund from which claims are payable, the provision has been inserted, in the enactment that such determination by the court shall be elicited by the claimant only when other similar questions are to be tried, namely, on the accounting, which may be precipitated by the creditor within seven months from the date of grant of letters. (Surr. Ct. Act, § 259, subd. 1-a.) This, in practice, is customarily within an extremely brief time after the rejection of the claim and usually permits of its determination more expeditiously than would be possible in most courts of general jurisdiction. This postponement of remedy for the benefit of the estate is not, however, to be construed as in any wise an impairment of the basic rights of the claimant but merely a waiver of certain privileges of procedure which he otherwise would possess. Consequently, if the representative of the estate himself initiates the attack, such action amounts, in effect, to a rejection of the preferred waiver of rights as to such action or proceeding and the claimant is at liberty to assert therein such rights as he may possess.

There is, however, another, and, if possible, a more conclusive answer to this contention of the present petitioner. The word

" claim " in surrogate's practice has a well-defined connotation and as noted in *Silliman* v. *Eddy* (8 How. Pr. 122, 123) possesses the meaning of " the demand of anything that is in the possession of another." This thought is further emphasized in *Orvis* v. *Jennings* (6 Daly, 434, 446): " All the definitions agree that a claim is a demand for a thing, the ownership of which, or an interest in which, is in the claimant, but the possession of which is wrongfully withheld by another." In *Vintah State Bank* v. *Ajax* (77 Utah, 455, 464; 297 P. 434) the court quotes with approval and applies the definition of the word given in 11 C. J. 816: " the word is derived from the Latin clamor, meaning a call, a demand. In its ordinary sense the term imports the assertion, demand, or challenge, of something as a right; the assertion of a liability to the party making it do some service or pay a sum of money." The latter part of this definition is approved by Judge CULLEN (*Cornell* v. *Travelers' Ins. Co.*, 175 N. Y. 239, 252) on the authority of 1 Bouvier's Law Dictionary, 332. This is unquestionably the connotation in which the word is employed in section 211 of the Surrogate's Court Act.

Viewed in the light of its meaning, the respondent never had a " claim " in respect of the articles which are the subject-matter of this proceeding, since they were in its own possession. Since it had no claim in this sense, its notice of assertion of title did not amount to a presentation of a claim, wherefore the provisions of section 211 of the Surrogate's Court Act are inapplicable.

The second noted basis advanced for recovery is that the by-laws of the society provided that " any person of blameless Christian (Evangelical) character, above the age of sixty years * * * may be received in the home; " that at the time of her admission the decedent was only fifty-nine and that, in consequence, the contract for her admission was *ultra vires* and void.

Three answers to this position readily suggest themselves. The first is that whereas the book of by-laws of the society published in 1928 did contain such a provision, it was established on the hearing, without contradiction, that, prior to the date of the application and admission of the decedent, the pertinent rule had been altered to agree in substance with the first and third paragraphs of respondent's Exhibit 1, which provide that an applicant for admission shall have " passed the sixty-fifth year in age," but that exceptions to this rule can be made in cases worthy of special consideration upon a two-thirds vote of the board of managers. The decedent's application was accepted after mature consideration by a unanimous vote of the board of managers.

The second answer is that there is a " legal presumption " that " the dealings of a corporation, which on their face or according

to their apparent import, are within its charter are not to be regarded as illegal or unauthorized." (*Chautauque County Bank* v. *Risley,* 19 N. Y. 369, 381.) Stated equivalently, the burden of demonstration is upon one asserting a corporate act to have been improper. If, therefore, there is a permissible construction of its charter of authority which would result in a determination of the propriety of the acts performed, this should be adopted. Such a construction is open even under the by-laws of 1928. These provided that " any person * * * above the age of sixty years * * * may be received into the home." This is a purely affirmative statement applying solely to persons above the stated age. On ordinary principles of syntax it is not necessarily construable as involving the negative, of an inhibition against one under sixty. In view of the presumption of law of proper action by the corporation it is not properly so construable.

The final and conclusive answer to the contention, however, is that whether or not the officers and employees of the society violated one of its by-laws is no concern whatsoever of the decedent or any one standing in her position, as is her administratrix.

The by-laws of a corporation are merely an agreement or " compact " between the corporation and its members or stockholders. (*Kent* v. *Quicksilver Mining Co.,* 78 N. Y. 159, 179; *Matter of American Fibre Chair Seat Corporation,* 241 App. Div. 533, 535.) The decedent was never a member of the corporation and, therefore, never possessed any *locus standi* to complain if this private agreement, to which she was not a party, was violated. Such action is possible only by one whose contract rights, as thus defined, have been infringed. The decedent's position was analogous to that of a hotel guest who would certainly not be heard to dispute the payment of the agreed return for her entertainment because of the fact that some internal rule of the management of the hotel had been violated in her initial admission.

The petitioner has apparently confused the cases respecting acts of a corporation in excess or violation of its charter powers with the present which involves merely a question of internal management wholly unconnected with the authorities or limitations of the statute to which it owes its existence. Even had the admission of the decedent violated the charter authority, however, this fact would have afforded no defense to the decedent against an action to enforce the contract with her, since by no stretch of the imagination could her admission be deemed *malum in se* or *malum prohibitum.* (*Kent* v. *Quicksilver Mining Co.,* 78 N. Y. 159, 186; *Holmes & Griggs Mfg. Co.,* v. *Holmes & Wessel Metal Co.,* 127 id. 252, 258.) In such a situation only the State and the stockholders

or members of the corporation are affected by the performance of the unauthorized act and a remedy is accorded to them alone, either by a quo warranto proceeding by the State or direct action by the stockholders or members. (*Bissell* v. *Michigan Southern R. R. Co.*, 22 N. Y. 258, 274; *Castle* v. *Lewis*, 78 id. 131, 135; *Rider Life Raft Co.* v. *Roach*, 97 id. 378, 382. See, also, *Horn* v. *Bennett*, 243 App. Div. 808.) Such actions by a corporation are impregnable as against strangers or to collateral attack. (*Eno* v. *Crooks*, 10 N. Y. 60, 66.)

The fact, if it were so, that the decedent was, at her request, permitted in violation of the regulation of the home, to go out on a certain evening could not be made the subject of complaint by her. *Volenti non fit injuria.* (*Riggs* v. *Palmer*, 115 N. Y. 506, 514.) In this connection the administratrix can assert no greater rights than those which the decedent, herself, possessed.

The final contention that the society waived its rights to the fulfillment by the decedent of her agreement to transfer her property .is not only not demonstrated, but is affirmatively negatived, by the record. As late as a few days before her death she was requested and promised to do so. This is not the variety of demonstration upon which a waiver may be predicated. (*Alsens A. P. C. Works* v. *Degnon Contracting Co.*, 222 N. Y. 34, 37; *Draper* v. *Oswego County Fire Relief Assn.*, 190 id. 12, 16; *Ansorge* v. *Belfer*, 248 id. 145, 150; *Matter of Miller*, 162 Misc. 563, 571; affd., 252 App. Div. 872; *Matter of Feldhus*, 165 Misc. 122, 123; *Matter of Heubach*, Id. 196, 201.)

Equity considers that done which should have been done. (*Matter of Braico*, 235 App. Div. 132, 135; affd., 260 N. Y. 625; *Wallace* v. *First Trust Company of Albany*, 251 App. Div. 253, 256; *Strong* v *Dutcher*, 186 id. 307, 314.) Here the decedent agreed in consideration of her admission to the home " to convey, transfer, assign, and deliver all " her " property and estate " to the society. She neglected to do so. Equity intervenes and for all purposes in this court deems it to have been accomplished. Title to all the property which is the subject-matter of this proceeding must be deemed to have vested in the respondent.

In view of the complete absence of foundation of the claim of the petitioner, the proceeding is dismissed upon the merits with a full bill of costs to be taxed.

Enter decree on notice in conformity herewith.