UNITED STATES v. RICHARDS et al.

(District Court, D. Nebraska. December 20, 1906.)

No. 101.

1. CONSPIRACY—DEFINITION.

Under the act of Congress providing that if two or more persons conspire either to commit any offense against the United States or to defraud the United States in any manner or for any purpose, and one or more do any act to effect the object of the conspiracy, all shall be liable to a penalty, the gist of the offense is conspiracy, combination, or agreement to effect an unlawful end, which offense is completed only on some one or more of the parties doing an act to effect the object of the conspiracy, termed an "overt act."

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, §§ 38, 39, 60.]

2. SAME—OVERT ACT.

An overt act, required to constitute conspiracy, must be a subsequent independent act, following the complete agreement or conspiracy, and done to carry into effect the object of the original combination.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, § 38.]

3. PERJURY—DEFINITION.

To constitute perjury, the party charged must take an oath before some competent tribunal or officer that he will testify, declare, depose, or certify truly that his written testimony, declaration, or certificate by him subscribed was true, when in fact some material matter so testified, declared, or certified by him was false and untrue, and known by him , at the time of taking such oath to have been false and untrue.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perjury, §§ 1–3.]

4. PUBLIC LANDS—HOMESTEAD.

It is not a compliance with the homestead law for a man to file on a tract of land with no intention of making it his home, with no purpose to live there, and with no intention of cultivating any part of it and acquiring it for a place of residence; but there must be a combination of act and intent to make the property entered his actual place of abode.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, § 74.]

5. SAME—AGREEMENT TO SELL.

An agreement to sell land entered by a homesteader, made prior to his acquisition of the patent, in violation of the homestead law, need not be in writing, nor of sufficient form or of a nature to be enforced in a court of law; but it is sufficient that the minds of the applicant and some other person have met definitely and understandingly, so that there was a mutual consent that, when the applicant acquired title to the land from the United States, it should inure to the benefit of the other for a consideration.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, §§ 371, 373.]

6. SAME—DISPOSITION.

An entryman may acquire a valid title under the homestead law, though his entry was made with a view of disposing of the land after he had completed his purchase, provided that at the time and before the completion thereof he had not entered into any agreement whereby such other should receive any of the benefit of such purchase.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, §§ 371–373.]

7. CRIMINAL LAW—EVIDENCE—INDICTMENT.

A finding of an indictment by a grand jury against a party is no evidence of the defendant's guilt.

8. CONSPIRACY—OVERT ACT—CONSIDERATION.

In a prosecution for conspiracy, the overt act may be considered, with other evidence, as one of the circumstances in determining whether or not there was a conspiracy or agreement charged.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, §§ 104, 107.]

9. CRIMINAL LAW—EVIDENCE—DECLARATIONS OF CONSPIRATORS.

In a prosecution for conspiracy, the acts and declarations of the persons accused may be considered, though made in the absence of some of the defendants, where the conspiracy has been fully established by independent evidence, and it has been shown that the defendant against whom it is offered was a party thereto.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 984, 1012.]

10. CONSPIRACY—HOMESTEAD ENTRIES—FRAUD.

In a prosecution for conspiracy to defraud the United States of certain public land under homestead entries, the fact that defendants advanced money to the entryman to pay his entry fee and to make improvements on the land was not in itself unlawful, and could only be considered in determining whether or not there was a conspiracy or unlawful agreement with the entryman, of which such advancement formed a part.

11. CRIMINAL LAW—EVIDENCE—ACCOMPLICES—WEIGHT.

Though evidence of accomplices is admissible in a criminal case, the jury should scrutinize the same with great care.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1099, 1111.]

12. SAME—PRESUMPTION OF INNOCENCE—REASONABLE DOUBT.

The presumption of innocence continues with accused throughout the trial, and stands as sufficient evidence to justify an acquittal, until on the whole evidence the jury is satisfied beyond a reasonable doubt of his guilt.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 719, 731.]

13. SAME—REASONABLE DOUBT—DEFINITION.

A reasonable doubt is sufficient to acquit a person of an offense, and is an actual, substantial doubt, arising and resting in the mind as testimony is heard and considered, which results after the exercise of judgment and reason, when fairly and candidly applied to an investigation of the evidence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1267, 1906.]

14. CONSPIRACY—CIRCUMSTANTIAL EVIDENCE.

Though the offense of conspiracy may be established by circumstantial evidence, the circumstances must be of such a character as to exclude every reasonable hypothesis but that of defendant's guilt of the offense charged.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, § 106; vol. 14, Criminal Law, § 1261.]

15. SAME—INDICTMENT—COUNTS—ISSUES AND PROOF.

Where an indictment for conspiracy contains several counts, it is sufficient, to warrant a conviction on counts charging two or more overt acts, that the evidence establishes the commission of one of them.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, §§ 105–107.]

16. CRIMINAL LAW—VENUE—PROOF.

In a prosecution in a federal District Court sitting in Nebraska, the evidence, in order to warrant a conviction, must show that the offense charged was committed within that state; the limits of the district of Nebraska being coextensive with the boundaries of the state.

17. PUBLIC LANDS—HOMESTEAD—ENTRY BY SOLDIER—VIEW.

A soldier of the United States may enter a homestead claim selected by an agent without ever viewing it.

18. SAME—FRAUD.

Fraud in the making of homestead entries may not be inferred from the fact that a large number of entries may have been solicited and located by one person, if the entries themselves are legal.

19. SAME—LEASE.

That defendants desired and did lease homestead lands from entrymen for grazing purposes could not make them responsible for any failure of the entrymen to comply with the law relating to settlement or residence on the land.

20. SAME—AGREEMENT TO SELL.

A homestead entryman may agree with any person at any time that when he has proved up on his land, if he desires to sell, he will give that person the first option to buy; such option in itself not being a violation of the law.

Charles A. Goss, U. S. Atty., and Sylvester R. Rush, Sp. Asst. U. S. Atty.

Richard S. Hall, Harry C. Brome, and A. W. Crites, for defendants.

MUNGER, District Judge (charging jury). I congratulate you that your labors, with those of the counsel and court, are drawing to a close. For 30 days you have been deprived of your liberty, the society of family, and cut off from intercourse with the world. The court would not have subjected you to this restraint, but for the public interest which the case has excited. It was proper that you should be removed beyond the reach of any popular feeling, whether favorable to the government or any of the defendants; for no popular wishes or considerations, no thoughts other than those which pertain to strict, impartial justice, should be permitted to invade the sanctity of the jury room to bias or even shade your deliberations. Now that the case is about to be committed to you for consideration and determination, we trust that your action will be such that you can return to your homes with a conscientious assurance that you have performed your duty justly and impartially, and with family and friends enjoy a Merry Christmas and a Happy New Year.

The prosecution in this case is based upon a statute of the United States as fo'lows':

"If two or more persons conspire, either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty."

The statute then prescribes the penalty for a violation of its provisions. This statute uses the word "conspire"; "if two or more persons conspire," etc. "conspire," or "conspiracy," has been defined as "a combination or agreement formed by two or more persons to effect an unlawful end, they acting under a common purpose to accomplish that end." Under this statute the gist of the offense is the conspiracy—the combination or agreement between two or more persons to effect an unlawful end. But, before the offense is a completed one, some one or more of the parties must do some act to effect the object of the conspiracy. Such act is termed an "overt act."

Persons may conspire together to commit an offense against the United States; but if the offense stops with an agreement, and no act is done to carry into effect the object of the agreement, no criminal offense has been committed. But, the moment any act is done to effect the object of the conspiracy, that moment criminal liability is fixed, and this act to effect the object, though it be done by only one of the parties, binds each and all of the parties to the conspiracy and completes the offense as to all; for in that case the act of one becomes the act of all. The overt act must be one independent of the conspiracy or agreement. It must not be one of a series of acts constituting the agreement or conspiring together; but it must be a subsequent, independent act following the complete agreement or conspiracy, and done to carry into effect the object of the original combination.

In this case the grand jury have presented an indictment against Bartlett Richards, Will G. Comstock, Charles C. Jameson, Ammi B. Todd, Aquilla Triplett, Thomas M. Huntington, Fred Hoyt, James K. Reid, and F. M. Walcott. The court has granted separate trials for some of the defendants, and in this case the only defendants on trial are Bartlett Richards, Will G. Comstock, Charles C. Jameson, Aquilla Triplett, and F. M. Walcott.

The first count of the indictment in substance charges that Bartlett Richards, Will G. Comstock, Charles C. Jameson, Ammi B. Todd, Aquilla Triplett, Thomas M. Huntington, Fred Hoyt, James K. Reid, F. M. Walcott, and divers other persons to the grand jurors unknown, on the 28th day of June, 1904, within the district of Nebraska, did unlawfully conspire, combine, confederate, and agree together among themselves to defraud the United States of the title, possession, and use of large tracts of land in Cherry and Sheridan counties, Neb., of great value, of which the following described land is a part thereof, to wit: The N. ½ section 31, the S. E. ¼ of the S. E. ¼ section 30, the S. W. ¼ of the S. W. ¼ section 29, and the W. ½ of the N. W. ¼ section 32, all in township 30 N., range 38 W. of the sixth P. M., in Cherry county, Neb.—by means of false, feigned, fraudulent, untrue, illegal, and fictitious entries of said lands under the homestead laws of the United States, the said lands being then and there public lands of the United States open to entry under said homestead laws at the local land office of the United States at Valentine, in the county of Cherry, and Alliance, in the county of Box Butte, respectively, in said state and district.

This is the offense charged, and for which the defendants are on trial, to wit: That they entered into an unlawful conspiracy, and did unlawfully combine, confederate, and agree together among themselves, to defraud the United States of the title, possession, and use of large tracts of land in Cherry and Sheridan counties, Neb., a portion of which were the lands above described. The overt act is charged in substance as follows: That in pursuance of said unlawful conspiracy, combination, confederation, and agreement among themselves, had as aforesaid, and to effect the object of said conspiracy, the said parties, whose names have been given, did, on the 28th day of June, 1904, at the town of Merriman, in the county of Cherry, within the said district and state, fraudulently, unlawfully, and corruptly persuade, induce, and hire one Clyde R. Beckwith to take an oath before one El L. Heath, a United States commissioner, that a certain written affidavit, then and there made by said Clyde R. Beckwith, was true, which affidavit was to the effect that a certain written application, No. 15,082, to the register of the United States land office at Valentine, whereby said Clyde R. Beckwith applied to said register to enter the public lands theretofore described, under the homestead laws of the United States, in which affidavit the said Clyde R. Beckwith stated in substance and effect that he did not apply to enter the said lands on speculation, but in good faith to appropriate the same to his own exclusive use and benefit, and that he had not, directly or indirectly, made any agreement or contract in any way or manner, with any person or persons whomsoever, by which

. the title he should acquire from the government of the United States should inure in whole or in part to the benefit of any person except himself; whereas, in truth and in fact the said Clyde R. Beckwith and said defendants (naming them), and each of them, then and there well knew that said Clyde R. Beckwith did not apply to enter said lands in good faith and for the purpose of appropriating the said lands to his own exclusive use and benefit, but in truth and in fact for the use and benefit of said Bartlett Richards, Will G. Comstock, Charles C. Jameson, and the Nebraska Land & Feeding Company, a corporation, and said divers other persons to the grand jurors unknown. That in fact the said Clyde R. Beckwith and defendants (naming them) well knew that said Beckwith, in making said affidavit and entry of said lands, was acting as the agent of, and in collusion with, and for the benefit of, said Bartlett Richards, Will G. Comstock, Charles C. Jameson, and the Nebraska Land & Feeding Company, under an agreement and contract before made with the said (naming all defendants), whereby the said Beckwith agreed that the said title which he might acquire from the government of the United States to said lands should inure to the benefit of said Richards, Comstock, Jameson, and the Nebraska Land & Feeding Company, and divers other persons to the grand jurors unknown. That in pursuance of said unlawful conspiracy, confederation, and agreement the said defendants (naming them) did pay and cause to be paid to the receiver of the United States land office at Valentine the sum of $14, the filing fee and costs of said entry; and, further, in pursuance of said unlawful conspiracy, combination, confederation, and agreement among themselves as aforesaid, and to effect the object of such unlawful conspiracy, the said defendants (naming them) and divers other persons to the grand jurors unknown did build and cause to be built upon the lands above described and so entered as aforesaid a small house, of the value of $25, for and as the homestead improvements of the said Clyde R. Beckwith, without expense, charge, or cost to him, the said Clyde R. Beckwith, therefor.

Each of the first 31 counts in the indictment are similar to this in charging the offense, to wit, the unlawful combination and agreement between the parties named to defraud the United States out of certain of its public lands by means of a fraudulent use of the homestead law. The several counts differ in regard to dates, specific tracts of land, and the overt acts committed in furtherance of the unlawful combination or agreement. It will, however, be unnecessary for me to read to you the substance of the remaining 31 counts, as the principles of law which must govern you in the consideration of this case are applicable to each of said 31 counts.

Counts 32 to 38 inclusive, charge the defendants with conspiring together to violate section 5393 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3654], which section is as follows:

"Every person who procures another to commit any perjury is guilty of subornation of perjury, and punishable as in the preceding section prescribed."

The gist of the offense in these counts is, as in the 31 counts, the unlawful conspiring, combining, confederating, and agreeing together;

differing in this: That in the first 31 counts the unlawful conspiring, combining, confederating, and agreeing together had for its object the defrauding the United States out of certain lands by a fraudulent use of the homestead law. In these 7 counts, from the 32d to the 38th, inclusive, the object of the unlawful conspiracy, confederation, and agreement, was to commit an offense against the laws of the United States, to wit, section 5393 of the Revised Statutes, which I have just read, to wit, by unlawfully, willfully, knowingly, and corruptly agreeing together and with divers other persons to the grand jurors unknown to unlawfully, willfully, and knowingly suborn, instigate, and hire certain persons named in the several counts of the indictment to unlawfully, willfully, knowingly, and corruptly commit the offense of perjury against the laws of the United States.

Perjury is defined by section 5392 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3653] as follows:

"Every person who, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury."

Section 5393, which I have heretofore read, defines subornation of perjury by providing that:

"Every person who procures another to commit any perjury is guilty of subornation of perjury."

To constitute perjury, a party must have taken an oath before some competent tribunal, officer, or person authorized to administer an oath that he will testify, declare, depose, or certify truly that his written testimony, declaration, or certificate by him subscribed is true, when in fact some material matter so testified, declared, or certified to by him is false and untrue, and known by the party at the time of taking such oath to have been false and untrue.

The gist of the offense in these seven counts, as I have said, is the combining, confederating, and agreeing together upon the part of the defendants and the parties named with them in the indictment to unlawfully, willfully, and knowingly suborn, instigate, and hire certain persons named in the several counts of the indictment to unlawfully, willfully, and knowingly commit the offense of perjury against the laws of the United States. To constitute perjury it is not sufficient that the oath so taken be false and untrue as to some material matter, but it must further appear that the party knew at the time of taking his oath that the same was false and untrue.

The first 31 counts of the indictment, as before stated, charge that the parties entered into a conspiracy to defraud the United States out of certain lands by means of a fraudulent use of the homestead law, and that overt acts committed in furtherance of such conspiracy were the causing and procuring of a false and fraudulent declaratory statement, and in some of the counts fraudulent entries under the homestead law. The provision of the homestead law applicable to the consideration of this case is as follows:

149 F.—29

"That any person applying to enter land under the preceding section shall first make and subscribe before the proper officer, and file in the proper land office, an affidavit that he or she is the head of a family, or is over twenty-one years of age, and that such application is honestly and in good faith made for the purpose of actual settlement and cultivation and not for the benefit of any other person, persons, or corporation, and that he or she will faithfully and honestly endeavor to comply with all of the requirements of law with reference to settlement, residence, and cultivation necessary to acquire title to the land applied for; that he or she is not acting as agent of any person, persons, corporation, or syndicate in making such entry, nor in collusion with any person, persons, corporation or syndicate to give them the benefit of the land entered, or any part thereof, or the timber thereon; that he or she does not apply to enter the same for the purpose of speculation, but in good faith to obtain a home for himself or herself, and that he or she has not directly or indirectly made, and will not make, any agreement or contract in any way or manner with any person, persons, corporation, or syndicate whatsoever, by which the title which he or she might acquire from the government of the United States should inure in whole or in part to the benefit of any person except himself or herself."

The object and purpose of the homestead laws of the United States were to grant land to actual, bona fide settlers, persons making settlement upon the public lands for use as homesteads, and to encourage residence upon, cultivation, and improvement of the public domain. The applicant, as the portion of the statute I have read states, is required to verify that his application is in good faith, made for the purpose of actual settlement and cultivation, and not for the benefit of any other person; that he will faithfully and honestly endeavor to comply with the requirements of law as to settlement, residence, and cultivation necessary to acquire title to the land applied for; that he is not acting as agent for any person in making such entry, nor in collusion with any person to give him the benefit of such land entered; that he does not apply to enter the land for the purpose of speculation, but in good faith to obtain a home for himself; that he has not directly or indirectly made any agreement or contract in any way or manner with any person or corporation by which the title he may acquire shall inure in whole or in part to the benefit of anyone except himself.

In establishing a residence, as required by the homestead law, there must be a combination of act and intent—the act of occupying and living upon the claim, and the intention of making the same a home to the exclusion of a home elsewhere. Inhabitancy must exist in good faith. It is not a compliance with the homestead law, for a man to file on a tract of land with no intention of making it his home, with no purpose to live there, with no intention of cultivating any part of it and acquiring it for a place to reside in.

The statute, in forbidding the applicant to make directly or indirectly any agreement or contract in any way or manner with any person by which the title he may acquire from the government shall inure in whole or in part to the benefit of any person except himself, means by the word "agreement" that there must be a meeting of minds expressed in some tangible way, and must be an intent in some way to be binding upon the parties. One party may have intended to sell, the other party may have intended to buy, yet this would not be sufficient, unless the intention of each was in some way communicated from one to the other, and was understood and agreed to by both.

An agreement, as the word "agreement" is used, need not be in writing. It need not be of sufficient form or of the nature to be enforced in court. It is enough if it is proven beyond a reasonable doubt that in some way the minds of the applicant and some other person have met definitely and understandingly—that there is a mutual consent—that, when the applicant may acquire title to the land from the United States, it shall inure to the benefit of such other person for a consideration; that is, that in truth and in fact the applicant is ready to acquire the land for the use and benefit of another. And any words and acts manifesting this mutual consent of the minds of the parties are sufficient to constitute a contract or agreement.

The applicant, under the statute, is also required in his affidavit to state that he does not apply to enter the land for the purpose of speculation, but as a home for himself. This provision, that he does not seek to acquire it for speculation, was not intended to limit the homesteader's dominion over the land after he has complied with the provisions of the homestead law, made his final proof, and acquired title. It is only intended to prohibit his entering the land under an agreement whereby he is acting for another. He may acquire valid title under the homestead law with a view of disposing of the same after he has completed the purchase, provided that at and before the time of completing such purchase under the homestead law he has not entered into an agreement with another whereby such other should receive any of the benefit of such purchase.

A person is required to reside upon his homestead five years before making final proof. An exception to this rule is where the homesteader has served in the army or navy of the United States. A person who has served in the army or navy of the United States and received an honorable discharge is given by law six months after making his filing to enter upon and establish his residence upon the land, and the period of time served in the army or navy may be deducted from the period of five years residence, provided, however, that in any event the party must reside at least one year upon the land.

This prosecution is based upon an indictment found by the grand jury. The finding of an indictment by a grand jury against a party is no evidence of the defendant's guilt. That must be established upon the trial by competent and sufficient evidence. In this case, then, your first inquiry should be, was there an unlawful agreement entered into by two or more of the parties named in the indictment to defraud the United States out of certain of its public lands mentioned in the indictment, by means of the false and fraudulent use of the homestead laws of the United States? The understanding, combination, or agreement between the parties in the given case to defraud the United States out of its lands, as charged in the indictment, must be proven, because, without the corrupt agreement or understanding, there is no conspiracy.

It seldom, if ever, happens that, when parties enter into a conspiracy or agreement to accomplish an unlawful end, such agreement is reduced to writing or specifically stated to witnesses, and it is usually necessary to resort to circumstantial evidence to establish the agree-

ment or conspiracy. The acts of parties in the particular case, the nature of those acts, or declarations and statements, whether verbal or in writing, and the character of the transactions or series of trans-actions, with the accompanying circumstances, as the evidence may disclose, should be investigated and considered as circumstances from which evidence may be derived of the existence or nonexistence of an agreement, which may be expressed or implied, to do the unlawful act.

I have before stated that the overt act must be one independent of the conspiracy or agreement. This is true. Yet the overt act, the manner and circumstances under which it is done, may be considered, in connection with other evidence in the case, as one circumstance in determining whether or not there was the conspiracy or agreement charged. But it must be established that the conspiracy or agreement which is charged to have existed, and which is the gist of the action in this case, had been formed before and was existing at the time of committing the overt act.

The government affirms the formation and existence of a conspiracy to commit the particular offense charged against the United States, and that these defendants were each a party to such conspiracy. The burden is therefore upon the government to prove what it thus affirms by legal and competent evidence, in order to ask a verdict in its favor.

As has been said, in determining the question of the formation or existence of a conspiracy, the acts and declarations of the persons accused may, among other circumstances, be looked to and considered by the jury. Statements of some of the accused conspirators, in the absence of the defendants, and some of them, on trial, and conversations with some of the witnesses on the part of persons accused as co-conspirators, other than the defendants, made in the absence of the defendants, have been given in evidence. These statements were admitted to show the nature and purpose, the plan and operations, of the conspiracy, if one existed, and to aid in shedding light upon the relation of the persons so speaking to the transactions; but guilt cannot be fastened upon any person by the declarations or statements, oral or written, by others. Guilt must originate within a man's own heart, and it must be established by his own acts, conduct, or admission. To establish the connection of any one of the defendants with the conspiracy, such connection must be shown by facts and circumstances, or by his own acts, conduct, or declarations, independent of the declarations of others, and, until this fact is thus established, he is not bound by the declarations or statements of others.

The principle of law and rule of evidence is that, when once a conspiracy or combination is established and the defendant's connection therewith is shown by independent evidence, then he is bound by the acts, declarations, and statements of his co-conspirators, because in that event he is deemd to assent to or command what is done by any other in furtherance of the common object. In this case, in determining whether any one of the defendants on trial was a party to the conspiracy, if you find a conspiracy was formed, you cannot consider

the declarations and statements made by other persons to the various entrymen or others in the absence of such defendant, as such defendant is not bound by or affected by such statements and declarations of others, until it is shown by other competent evidence that he was a party to such unlawful conspiracy.

It will be well, then,. for you to take up and consider the evidence as it relates to each defendant on trial separately. For instance, Bartlett Richards is the first defendant named in the indictment. In considering whether or not he was a party to the conspiracy or agree-. ment, if you find there was one, you are only to take into consideration his own statements, action, and conduct, and his own connection with the action and conduct of others, as shown by the evidence, independent of any statements or declarations by others; and unless you find from such evidence that he was a party to such conspiracy, if one existed, then it would be your duty to acquit him. If, however, you find that he was a party to such conspiracy, then the statements and declarations of his co-conspirators may be considered as if made by him. Apply this same method in determining whether each of the other defendants were parties to the alleged conspiracy.

The parties are upon trial for the offense charged in the indictment, to wit, a conspiracy to defraud the United States out of certain lands, and to suborn perjury, and are not on trial for any other offense; and, though the evidence might establish the commission of some other offense, they are only to be found guilty for the offense charged. Should you find that a conspiracy existed, and that the defendants were parties thereto, then you should inquire whether or not one or more of the parties to such conspiracy did the act or acts in pursuance or in furtherance of such conspiracy, as is charged in the indictment, which acts I have denominated and called the "overt act"; for, although a conspiracy may have existed, unless some one or more of the overt acts charged in the indictment are established to have been committed by one or more of the conspirators, the offense charged in the indictment would not be established. On the other hand, although the evidence may establish to your satisfaction that the various homestead entries were fraudulent, yet that would not warrant a conviction, unless such fraudulent entries were procured to be made in pursuance of a precedent conspiracy or agreement, as I have before explained.

You are further instructed that the mere advancing of money to a party to enable him to enter his homestead, or advancing money to make improvements thereon, are not of themselves unlawful acts, but are simply acts and circumstances which may be considered in determining whether or not there was a conspiracy as alleged, or unlawful agreement by which the entryman was to make the entry, not for his own use and benefit, but for the use and benefit of another. Neither is it unlawful for a person having a bona fide homestead entry to permit another, by lease or otherwise, to use the same, if he does not thereby exclude himself from residing thereon. Such fact, if it be a fact, however, is to be considered with the other evidence in the case in determining the good faith and bona fides of the entryman.

Witnesses have been called in the course of the trial who have testi-

fied to their own participation in fraudulent and criminal practices. Criticism has been made of their testimony, and the weight to which it is entitled. The court instructs you on this subject that it is the settled rule in this country that even accomplices in the commission of crime are competent witnesses, and that the government has the right to use them as witnesses. It is the duty of the court to admit their testimony, and that of the jury to consider it. The testimony of accomplices is, however, always to be received with caution, and weighed and scrutinized with great care. But the jury should not rely upon it unsupported, unless it produces in their minds the most positive conviction of its truth. It is just and proper in such cases for the jury to seek for corroborating facts and circumstances in other material respects; but this is not absolutely essential, provided the testimony of such witnesses produces in the minds of the jury full and complete conviction of its truth.

In determining the guilt or innocence of each defendant in this case, you must be convinced beyond a reasonable doubt that he has committed the offense or offenses charged in order to convict him. Each and every fact necessary to constitute the offense must be so proven; that is, beyond a reasonable doubt. Until guilt is proven, there is an absolute presumption of innocence, and this presumption of innocence continues with the defendant throughout the trial, and stands as sufficient evidence in his favor until from the whole evidence you are satisfied beyond a reasonable doubt of his guilt.

It is the settled rule in criminal cases that a conviction cannot be secured upon strong suspicion or probabilities of guilt, nor, as in civil cases, upon a mere preponderance of evidence; but guilt must be established beyond a reasonable doubt. By a reasonable doubt is meant an actual, substantial doubt, that arises and rests in the mind as testimony is heard and considered; that results after the exercise of judgment and reason, when fairly and candidly applied to an investigation of the evidence. You may, therefore, in testing the character of the conviction or belief as to the guilt of each one of the defendants, ask yourselves this question: Would such a degree of conviction, certainty, or opinion as the proof in this case has made upon my mind be sufficient to induce or lead a prudent man to act in a matter of the highest concern or importance to his own personal interest? If you answer that question in the affirmative, then you cannot be said to have any reasonable doubt of the defendants' guilt. On the other hand, if the proof leaves your mind in such a state of doubt and uncertainty as to the guilt of the accused as would deter or prevent a man from acting in matters of great moment and importance to himself, there would exist a reasonable doubt, and the defendants should have the benefit of that doubt.

I have stated to you that the offense may be established by circumstantial evidence; but circumstantial evidence, to warrant a conviction in a criminal case, must be of such a character as to exclude every reasonable hypothesis but that of guilt of the offense imputed to the defendant, or, in other words, the facts proved must all be consistent with and point to his guilt only, and inconsistent with his innocence. The hypothesis of guilt should flow naturally from the facts

proven, and be consistent with them all. If the evidence can be reconciled either with the theory of innocence or with guilt, the law requires that the defendant be given the benefit of the doubt, and that the theory of innocence be adopted.

The credibility of the several witnesses is wholly for you to determine. In determining the credibility of the witnesses, take into consideration their demeanor upon the witness stand, the reasonableness or unreasonableness of their story, and their interest or lack of interest, if any, in the result of the suit. All these are matters proper to be considered in determining the weight or credibility which you will give to the testimony of any one of the witnesses. A large number of witnesses have been called, and many days occupied in the taking of testimony. This testimony, however, has been largely of the same character and with reference to overt acts charged in the indictment. Its credibility, the proper inferences to be drawn from it, and its app'ication to the charges made in the indictment, have been so thoroughly, ably, and fairly discussed by counsel that it is unnecessary that I should advert to or call your attention to any portion of it.

In your deliberations you should take up each count of the indictment separately, and consider the question of the guilt or innocence of each one of the defendants as charged therein, and if, in such consideration of each count of the indictment, and each defendant's relation thereto, the evidence convinces you beyond a reasonable doubt that the defendant is guilty as charged in the count of the indictment, then you should find him gui'ty upon such count. If each and al! the essential facts to constitute the offense as charged is not established, then his guilt is not proven beyond a reasonable doubt, and you should acquit him upon such count.

To warrant a conviction on counts of the indictment which charge two or more overt acts, it is not necessary that the evidence establishes the commission of every one of the overt acts. It is sufficient if the evidence establishes the commission of one of the overt acts charged in such count.

It is charged in the indictment that the several entrymen made their declaratory statements, applications, and entries, not for their own use and benefit, but for the use and benefit of the said Bartlett Richards, Will G. Comstock, Charles C. Jameson, and the Nebraska Land & Feeding Company, a corporation. Upon this feature of the case it is not necessary to establish that the entry was for the use and benefit of all of the parties named. It will be sufficient if the evidence establishes that it was for the use and benefit of some one of them.

The evidence must establish the fact that the offense, if committed, was committed within the district of Nebraska, and within three years before the finding of the indictment, which was June 15, 1906. The district of Nebraska is coextensive with the state of Nebraska. If the evidence does not show that the offense charged was committed within the district of Nebraska, then this court has no jurisdiction, and your verdict should be not guilty; and unless the indictment was found by the grand jury within three years from the committing of

the offense, then the prosecution is barred by the statute of limitations, and in such event your verdict should be not guilty.

The defendants have asked some instructions which I give, some modified, and they should receive the same consideration and be accepted as the law applicable to the case to as full an extent as if given by the court on its own motion.

The jury is instructed that there is no law requiring a soldier of the United States to see his land before entering it, and that a soldier who has filed his declaratory statement and had his land selected by an agent need not see the land before entering the same.

The jury is instructed that they are not entitled to infer fraud from the mere fact that a large number of entries may have been solicited and located by any of the defendants, if the entries themselves are legal. The great number of them would not make them illegal.

The jury is instructed that the mere fact that any of the defendants desired to lease, or did lease, any lands entered by entrymen, for grazing purposes, would not make them responsible for any failure of the entrymen to comply with the law relating to settlement or residence on such land. To say to an entryman upon government land under the homestead law that if, after he has made final proof and obtained title to the land, he desires to sell it, you will give him a definite sum of money therefor, is not a crime, and does not constitute an unlawful agreement respecting the title to public lands.

The jury is instructed that there is no law of the United States preventing an entryman from agreeing with any person at any time that, when he has proved up on his land, if he desires to sell, he will give that person the first chance to buy it, and that such an understanding of itself is not in violation of law. The mere fact that the homesteader may have said that, after he should prove up, he would sell if he could obtain a satisfactory price, or that he would give another the first chance to purchase, should he conclude to sell, or the mere fact that a party may have said to the homesteader, when he proved up, he would give him a stated sum, such statements alone would not constitute an agreement.

The jury is instructed that in this case it is charged that the purpose of the defendants was to defraud the government by means of false, feigned, fraudulent, untrue, illegal, and fictitious entries of land under the homestead laws of the United States, and that they cannot convict these defendants upon this charge in any case where the entry was not false, feigned, fraudulent, untrue, illegal, or fictitious.

The jury is instructed that the defendants, or any of them, had a perfect right to advance money to entrymen to pay filing fees, and to agree that, in the event the entryman desired to sell after he had proved up and the defendant then desired to buy, such advances should be credited on the sale, or if no such arrangement was thereafter made the money would be refunded, and that such an agreement would not, in and by itself, be a violation of any law of the United States. But such fact may be considered in connection with the other evidence in determining the existence of the alleged conspiracy or corrupt agreement.

The jury is instructed that the fact that somebody in the course of

the proceedings before the United States land department has made a false statement or false affidavit is not chargeable or imputable to the defendants, unless it is shown by the testimony, clearly and unmistakably and beyond a reasonable doubt, that the defendants in this case knew of the fact that such affidavit was false and procured it to be made with such knowledge.

Before you can convict any of the defendants of the crime charged against them, you must be satisfied to a moral certainty, and beyond a reasonable doubt, that some two or more of the defendants did agree, conspire, and confederate together, or with some other person named in the indictment as a co-conspirator, or with some other person or persons whose names were actually unknown to the grand jurors, and alleged to be unknown to them, to induce settlers to make entry upon the public domain, with the purpose and intent of having said settlers make final proof and final entry of said lands, without having complied with the laws of the United States with respect to settlement, residence, and improvement on said lands, and with the intent that said settlers should not comply with said laws or some of them in a substantial and material respect, and that, notwithstanding such failure in complying with such law by said settlers, they should make final proof and entry of said lands, and then convey them to the defendants, Bartlett Richards, Will G. Comstock, Charles C. Jameson, and the Nebraska Land & Feeding Company, or to some one of them. There must have been a clear intent on the part of the defendants, or of those of them you may find guilty, that said settlers should not comply with some law, and should make final entry and deed notwithstanding such noncompliance. It is not enough to warrant a conviction that the defendants may have thought or believed that some of such settlers might not comply with the law; but the defendants must have intended that such settlers should fail in some material respect in such compliance.

The jury is instructed that the evidence in this case of Anna Mechler, Charles W. Reed, Martha Reed, Mary Rose Reed, and Robert Reed, not being for acts charged in the indictment, was only admitted to show wrongful intent on the part of defendants, and cannot be considered for the purpose of establishing independent overt acts not charged in the indictment.

The case is now submitted to your consideration.