### ARNOLD v. SCHARBAUER et al.

(Circuit Court, W. D. Missouri. W. D. June 16, 1902.)

#### No. 2,596.

1. CONTRACTS—VALIDITY—UNCERTAINTY.

A written contract, by which the owners "of the following tracts of land, * * * containing about 500 acres," agreed to convey the same to a corporation to be formed, and the second party agreed to sell the stock of such corporation for a commission. is not one for the sale of the land, and is not rendered void by the failure to describe the land therein.

2. SAME—MUTUALITY—FAILURE OF ONE PARTY TO EXECUTE.

An instrument purporting to be a contract between two individuals, of the first part, and an individual "or" a corporation named, of the second part, and which imposed important obligations and liabilities upon

---

¶ 2. See Contracts, vol. 11, Cent. Dig. §§ 24, 163.

the parties of the second part, and stipulated for services which were to be rendered by one or the other of them, did not become a completed contract enforceable against the first parties, where it was never executed by the corporation.

8. SAME—CONSIDERATION.

By an instrument in writing the first parties agreed to convey lands to a corporation to be formed by them, to capitalize such corporation for a certain amount, and place the stock in the hands of the second parties for sale. They also bound themselves to pay a commission on the stock sold and a sum for advertising. The contract provided that the second parties should have the exclusive sale of the stock, and should deposit the proceeds in bank to the credit of the corporation. *Held*, that such contract was void as to the first parties for want of consideration, there being no provision by which, if carried out in accordance with its terms, they could obtain payment for their lands.

Action for Damages for Breach of Contract. On demurrer to petition.

Hugh C. Ward, for plaintiff.
Samuel W. Moore, for defendants.

PHILIPS, District Judge. This is an action for breach of the following contract which is set out in hæc verba in the petition:

"Whereas, Jno. T. McElroy, of Reeves county, Texas, and John Scharbauer, of Fort Worth, Tarrant county, Texas, parties of the first part, and Jas. H. Arnold, or the Western Cattle Brokerage Company, of Kansas City, Mo., parties of the second part, this day entered into the following agreement: The said parties of the first part are the owners of the following tracts of land, located near the town of Beaumont, Jefferson county, Texas, containing about five hundred (500) acres, which they agree to put into a corporation under the laws of the state of Texas, the said corporation to be known as the Pennsylvania and Texas Oil Company, with offices in Kansas City, Mo., and Beaumont, Texas. The said Jas. H. Arnold, or the Western Cattle Brokerage Company, is to put the stock of the said Pennsylvania and Texas Oil Company on the market for the purpose of selling and disposing of said stock at a par value on shares of ten cents (10 cts.) and one dollar ($1) per share, each share to represent a par valuation. One and one half million dollars ($1,500,000.00) is to be the capital stock of the said company. The said Jno. T. McElroy and John Scharbauer are to furnish one representative man in addition to themselves as incorporators for the state of Texas. The other portion of the directory, amounting to ten or eleven in number, is to be selected at Kansas City and other eastern points by John T. McElroy and Jno. Scharbauer. It is hereby agreed and understood that the said Jas. H. Arnold, or the Western Cattle Brokerage Company, is to have the exclusive sale of the said stock; but if, for any reason, the said McElroy and Scharbauer desire to take the stock off the market, they shall have the right to do so by paying said Jas. H. Arnold a reasonable compensation for his services. It is agreed and understood that parties of the first part are to furnish 100,000 dollars in stock to be disposed of among shareholders and directors of said company, and are to pay ten per cent. (10%) on the capital stock as a brokerage, and ten per cent. (10%) to said Jas. H. Arnold for his services, and $10,000 (ten thousand dollars) for newspaper and other advertisements. Jas. H. Arnold, or the Western Cattle Brokerage Company, is to furnish an office in a centrally located building in Kansas City, Mo., and is to bear the expenses of bookkeeper, stenographers, and assistant of the Kansas City office. The expenses of literature, stamps, and other necessary expenses is to be borne by the said parties of the first part. In all cases where such expenses are expended by the said Jas. H. Arnold, a voucher for the full amount is to be taken and exhibited to the said parties of the first part. It is the purpose of this contract to place the stock of the Pennsylvania

& Texas Oil Company on the market as speedily as possible, and it is agreed and understood that the said parties of the second part are not to handle any other oil stock during the time they are handling the stock of the said parties of the first part. It is the purpose of this contract and understanding that all parties to this contract are to act in good faith, each with the other; and it is also understood that this contract cannot be changed or altered unless it is done in writing, signed by Jno. T. McElroy, Jno. Scharbauer, and Jas. H. Arnold, and attached hereto and made a part of this instrument. Proceeds from sale of stock is to be deposited in bank to the credit of the Pennsylvania & Texas Oil Co.; bank to be designated by McElroy and Scharbauer.                                            John Scharbauer.

                                                "John T. McElroy.

                                                "Jas. H. Arnold."

The petition undertakes to eke out the omission in the contract to give the numbers of the land by averring what the particular lands were intended to be included therein. The petition then makes the general averment that the plaintiff has duly performed all the conditions of said contract to be performed by him, but that the defendants have wholly failed to perform their part of said contract, to the damage of said plaintiff in the sum of $325,000, for which judgment is prayed. To this petition the defendant McElroy, the only defendant served with summons herein, interposes a general demurrer.

The court quite agrees with the statement of plaintiff's counsel in his brief that when this contract was drawn "the lawyers were out of town." It is so vague and indefinite in some material respects that the court attempting to construe it has the same embarrassment as a housebuilder would feel who was directed to erect and furnish a house under general plans, but without specifications. The court is of opinion, however, that the contract is not void under the statute of frauds for failure to describe the 500 acres of land by metes and bounds or section lines. It is not a contract for the sale of land between the plaintiff and defendants as vendor and vendee. It is an agreement merely that the defendants, who represented themselves to be the owners of 500 acres of land near Beaumont, Tex., would put it into a corporation to be formed; presumably to make it the basis of the corporation assets for issuing and selling shares of stock thereon. The undertaking of the parties of the second part was to exploit and sell the stock of the corporation for a per cent. Browne, St. Frauds, § 263a; Snyder v. Wolford, 33 Minn. 175, 22 N. W. 254, 53 Am. Rep. 22; Carr v. Leavitt, 54 Mich. 540, 20 N. W. 576; Watters v. McGuigan (Wis.) 39 N. W. 382. Reading the contract by its four corners, with a view of giving it operation and effect if reasonably consistent with the entire scope of its terms, the court is further of opinion that it is clearly enough implied that the then owners of the land were to see to the matter of bringing into existence and organizing the corporation, as the express understanding was to put said lands "into a corporation under the laws of the state of Texas." The defendants were to become the incorporators, and to select a third person, resident of the state of Texas, essential to effect an organization of a corporation under the statute of that state. The further right was given to them of selecting 10 or 11 other incorporators, resident elsewhere. This conclusion is reasonably clear in view of the fact that the contract shows on its face that

the defendants, owners of the land, resided in Texas, and the other parties to the contract resided in Missouri.

A more serious question is presented on the face of the contract, which, being incorporated in the petition, is to be treated as a part, and a controlling part, of the averments of the petition. It describes the parties to the contract as Jno. T. McElroy, of Reeves county, Tex., and Jno. Scharbauer, of Fort Worth, Tarrant county, Tex., parties of the first part, and Jas. H. Arnold, or the Western Cattle Brokerage Company, of Kansas City, Mo., parties of the second part. It is impossible, it seems to the court, to read the Western Cattle Brokerage Company out of the contract. It is named as one of the parties of the second part, and also four times in the contract as a party thereto. While it imposes the obligations and undertakings on the part of the parties of the second part on Jas. H. Arnold, or the Western Cattle Brokerage Company, the defendants, by its terms, are as much entitled to have the Western Cattle Brokerage Company bound as Jas. H. Arnold. By the express terms of the contract, the obligation to put the stock on the market after the creation of the corporation, and to exploit and sell it, is imposed upon the Western Cattle Brokerage Company as much as it is on Jas. H. Arnold. It is a reasonable inference that in agreeing to organize the corporation at their expense and trouble, and investing it with the title to their 500 acres of land, the inducement of the defendants thereto was that they should have the right to the services, influence, and responsibility of the organized body of the Western Cattle Brokerage Company as much so as that of Mr. Arnold. In other words, they were to have the personal responsibility of either; so that in case of default on the part of the parties of the second part, they could look for indemnity to both Arnold and the brokerage company. In short, the defendants never came to a compact alone with Arnold in the proposed enterprise. By the express provision of the contract, "the said Jas. H. Arnold, or the Western Cattle Brokerage Company, is to have the exclusive sale of said stock." It further provides that "Jas. H. Arnold, or the Western Cattle Brokerage Company, is to furnish an office in a centrally located building in Kansas City, Mo., and is to bear the expenses of bookkeeper, stenographers, and assistant of the Kansas City office." One of the parties of the second part might fail to keep this last obligation, but that would not release the other therefrom. If both failed to comply, the defendants could look to both for compensation; or, if one should become insolvent and the other remain solvent, the defendants could look to the latter. Again, the contract stipulates that "it is agreed and understood that the said parties of the second part are not to handle any other oil stock during the time they are handling the stock of said parties of the first part." This was a valuable right conferred upon the parties of the first part. The Western Cattle Brokerage Company, as its association name implies, was engaged in the brokerage business, possessing, presumptively, the privileges and advantages incident to this character of business. The contract, as drawn, not only entitled the defendants to the services of this brokerage company in disposing of the stock, based upon the 500 acres of land to be

conveyed by them to the corporation, but the additional right and advantage of having the brokerage company refrain from handling any other oil stock during the obligated service of the parties of the second part to the defendants. It is true, as suggested by counsel for plaintiff, that the contract, in one place, provides that, in case the parties of the first part should desire to take the stock off the market, they should have the right to do so by paying said Jas. H. Arnold a reasonable compensation for his services; and in another place it provides that, while the expense of getting up literature, stamps, etc., is to be borne by the parties of the first part, in cases where such expenses are paid by said Jas. H. Arnold, a voucher therefor is to be taken and exhibited to the said parties of the first part; and, further, that the contract could not be changed or altered unless in writing, signed by Jno. T. McElroy, Jno. Scharbauer, and Jas. H. Arnold. But these provisions did not in any wise affect or qualify the obligations imposed by the contract upon the Western Cattle Brokerage Company. And for aught the court knows, the provisions for allowing Jas. H. Arnold alone a reasonable compensation in addition to the brokerage of 10 per cent. in the event the parties of the first part took the stock off the market, and that the contract might be changed or altered if acceded to in writing by Arnold alone, were the reasons why the contract was not executed by the Western Cattle Brokerage Company. Without acceptance of the contract, evidenced by its execution on the part of the Western Cattle Brokerage Company, under the allegations of the petition it does seem to the court that the defendants have the right to say, "We came not to this compact." "Where a contract is a unit, and left uncertain in one particular, the whole will be regarded as only inchoate, because the parties have not been ad idem, and therefore neither is bound." Appleby v. Johnson, L. R. 9 C. P. 158; Bank v. Hall, 101 U. S. 50, 25 L. Ed. 822.

There is another remarkable feature of this contract. The defendants, owning 500 acres of land, of sufficient estimated value to form the basis for the capitalization of the stock of the corporation at $1,500,000 par value, were to transfer it unconditionally to the corporation, without any provision whatever that they were to have a dollar of the stock of the corporation in exchange therefor, or that the corporation to be formed should pay one cent for said land, which was to be the basis for issuing its stock. It does provide for furnishing to the shareholders and directors of said company $100,000 in stock. It also requires the defendants absolutely to pay $10,000 "for newspaper and other advertisements." But so far from even impliedly recognizing the right of the defendants to the proceeds of the stock, the contract expressly provides that "the proceeds from the sale of stock is to be deposited in bank to the credit of the Pennsylvania & Texas Oil Co. [which was to be the name of the corporation to be formed under the contract]. Bank to be designated by McElroy and Scharbauer." The Pennsylvania & Texas Oil Company would, therefore, become the beneficiaries of the proceeds, subject to all the liabilities of the corporation; and the dividends would, of course, be distributed among the holders of the $1,500,000 shares

of stock sold and scattered over the world; from which it is apparent that this contract, on the part of the defendants, is a mere nudum pactum. In all contracts, especially such as involve the transfer of one's real property to another, when reduced to writing, some consideration price to the transferrer must appear on the face of the instrument. "In the absence of such provision, either stating it, or furnishing a mode for fixing it, the agreement would be plainly incomplete, and could not be enforced." The very terms "agreement" or "contract" signify a mutual agreement "on consideration between two or more parties." So say all the authorities.

Again, the contract recites that the parties of the first part are "to pay ten per cent. on the capital stock as a brokerage, and ten per cent. to said Jas. H. Arnold for his services." What does this mean? If it be said that 10 per cent. on the capital stock "as brokerage" means 10 per cent. on the amount of stock sold, what kind of services, in addition, are to be performed by Jas. H. Arnold, to entitle him to an additional 10 per cent. on the entire capital stock? They are not specified; and both jury and court would be at sea, without chart or compass, in ascertaining whether or not "his services," within the contemplation of both parties to the contract, had been performed to entitle him absolutely to 10 per cent. award on the capital stock. Such a contract, in my judgment, is incapable of enforcement. It is lacking in mutuality between the parties plaintiff and defendant, and is wanting in certainty to a common intent.

The demurrer is sustained.