## WILLIAMS v. DIESEL et al.

No. 7495—Opinion Filed May 15, 1917.

(165 Pac. 187.)

**1. Indians—Deeds—Validity—Act of Congress.**

A member of the Creek Tribe of Indians, upon the alienation of whose allotted lands restrictions imposed by federal enactment did not expire until August 8, 1907, in order to effectuate an agreement entered into before that time with her grantee, executed and delivered three deeds purporting to convey such lands on March 2, July 1, and August 9, 1907, respectively. Held, that such deeds were inefficient to convey title and void, as violative of an act of Congress approved April 26, 1906 (ch. 1876, 34 Stat. 144), then in force, section 19 of which provides: "And every deed executed before, or for the making of which a contract or agreement was entered into before the removal of restrictions, be and the same is hereby declared void."

**2. Jury—Cancellation of Conveyance — Indians.**

A suit seeking the cancellation of such deeds on the ground that same were executed in violation of congressional enactment is one of equitable cognizance, wherein the parties are not entitled, as a matter of right, to a jury trial.

(Syllabus by Bleakmore, C.)

Error from District Court, Creek County; Wade S. Stanfield, Judge.

Action by Rena Williams against M. L. Diesel and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

S. H. Sornborger, for plaintiff in error.

W. P. Root and W. L. Cheatham, for defendants in error.

Opinion by BLEAKMORE, C. This case presents error from the district court of Creek county, wherein Rena Williams, on May 23, 1913, commenced action against M.

L. and Bertha Diesel for the cancellation of three deeds executed by her to A. H. Purdy on March 2, July 1, and August 9, 1907, respectively, purporting to convey certain lands allotted to her as a member of the Creek Tribe of Indians, exclusive of her homestead, on the ground that such deeds were violative of congressional enactment, and therefore void, the first two being executed prior to the removal of restrictions upon the alienation of the lands described, and the third an attempted ratification of the former conveyances and likewise void, and seeking also the cancellation of a deed to said lands from Purdy to the Diesels, of date September 25, 1907, recovery of the premises, etc.

Upon notice by his grantee to defend the action, Purdy filed his answer, setting forth, among other things:

"That both plaintiff and defendant, recognizing that the deeds from plaintiff to A. H. Purdy of date March 2, 1907, and July 1, 1907, were void and of no legal effect in law, did on the 9th day of August, 1907, enter into a separate and independent contract in relation to the sale of said land, by which the plaintiff agreed with defendant A. H. Purdy and sold to A. H. Purdy the lands mentioned in plaintiff's petition, and made and executed a deed to A. H. Purdy, in pursuance of said contract so made on the 9th day of August, 1907, conveying to A. H. Purdy said lands for a new and independent consideration of the sum of $500, and this defendant denies that said last-mentioned deed was taken or given in ratification of the deeds mentioned and given by plaintiff to defendant on March 2, 1907, and July 1, 1907, or that there was in any manner or way a ratification of said deeds, and this defendant says that there was an adequate consideration paid for said lands on said 9th day of August, 1907, and the plaintiff received the same and executed the deed for said consideration, and independent of, and not in ratification of, said preexisting deeds."

The Diesels also answered, alleging that they were bona fide purchasers from Purdy for a consideration of $1,500, and adopting as their own the answer of Purdy. To these answers plaintiff replied by way of general denial.

The case was tried to a jury. At the conclusion of the evidence offered on behalf of plaintiff demurrer thereto was sustained, and the court directed a verdict for defendants, and rendered judgment accordingly. Plaintiff has appealed.

Plaintiff is a half-blood Creek Indian, and the premises involved constitute her surplus allotment, restrictions upon the alienation of

which existed until August 8, 1907, when they were removed by operation of law. She, being the sole witness in the case, testified:

"Q. The record, as your petition alleges, indicates that you made a deed of conveyance of your surplus allotment to Mr. Purdy on the 2d day of March, 1907. Do you recall that occasion? A. A deed? He didn't say it was a deed at that time; he said it was a contract; and he seen my husband out there and told him to bring me in and he would sign me a contract to pay me more than anybody else, and so my husband did so. Q. Well, you executed that deed in here, did you? A. Yes, sir. Q. And he represented to you that it was a contract for what? A. Yes, sir. Q. That he would buy it then? A. Yes, sir. Q. When would he buy it? A. After the restrictions were removed. Q. That is what he represented to you? A. Yes, sir. Q. And in pursuance of that you signed what now seems to be a deed? A. Yes, sir. Q. Mrs. Williams, have you ever been to school? A. No, sir; I never have. What little learning I have I learned at home. Q. Are you able readily to read and write? A. No, sir. Q. You do write your own name? A. Yes; a little. Q. Well, did he pay you anything for it at that time? A. No, sir; he did not. Q. He simply promised to pay you more than anybody else? A. Yes, sir; after the restrictions were removed; yes, sir. Q. Well, at that time when was it supposed the restrictions would become removed? Under the act of Congress? A. He said in July some time. Q. The record shows you executed a deed under date of July 1, 1907. At that time did you receive any consideration in money or anything? A. Well, I went there, it was a picnic given there at home, and I went in and told my husband I wanted some money, and he told me to go to Mr. Purdy and get $50. And that is all I ever did get. Q. Did you at any time, either before or after that, get any more. A. No, sir; that is all. Q. Now on the 9th of August, 1907, you appear to have made another deed? A. Yes, sir. Q. How came you to make that? A. He claimed that the restrictions were removed and that he would pay me the money after I signed the deed. But after I signed the deed, he says, 'There is nothing due you; I paid it to Sam;' and Sam said, 'Come out—' Q. Who is Sam? A. My husband, Sam Williams. . Q. Where is your husband? A. I don't know. He said I could get it back if I tried; and I said, 'Why don't you help me?' and he said 'I haven't anything to do with it.' * * *"

Cross-examination:

"Q. You didn't sell this to him on the 2d of March. 1907? A. No, sir; I contracted with him, when the restrictions were removed. Q. In writing? A. Yes, sir; he made a contract but I never read it. Q. Have you a copy of it? A. That writing copy? Q. Yes? A. No. Q. You complain of that deed as being your contract? A. No, sir; he didn't say any deed; he said contract. Q. You didn't sign but one paper in March, 1907, did you? A. He said it was a contract. Q. You then signed but one paper? A. Yes, sir. Q. You signed no notes? A. No, sir; I never owed nothing. Q. You didn't make any notes to the International Bank? A. No, sir. Q. Sign them with your husband? A. No, sir. Q. After the second deed, did you make any written contract with Mr. Purdy at that time to sell the land to him? A. Yes. sir; I made it this way ,that he would pay me $1,100 with the $50 I got that day before I made the contract. Q. That was just a verbal contract? A. Yes, sir. Q. You told him, if he would loan you that $50, you would sell the land when you got the— A. Yes; when I got the restrictions removed. Q. You didn't pretend to sell it to him that day? A. No. Q. What security did you give Mr. Purdy for the $50? A. I never gave him any security at all; I just went and got it and came out. Q. Didn't sign any note or mortgage at the bank? A. No, sir; didn't have anything to mortgage. Q. Didn't sign that deed as security? A. No, sir. The last deed? Q. No; I am talking about the second one. A. No. He wouldn't pay me all my money until the restrictions were removed. Q. You went back there on the 9th of August? A. My husband carried me back there. Q. Your husband carried you back there? A. Yes, sir. Q. You went voluntarily? A. He asked me to go. Q. And you signed the deed on that occasion? A. Yes, sir; to get my money. Q. Wasn't discussed on that occasion that your debt to the International Bank, that they would be paid out of this consideration? A. No, sir; I never owed the bank anything that I know of. Q. Or the National Bank? A. It neither. Q. Do you remember the 10th of October, 1907, of giving Mr. Purdy a receipt for $850? A. No, sir; I don't know anything about that. Mr. Purdy came up to me in August. He wanted me to give him a receipt, and I said, 'For what?' and he said, 'The 120 acres of land;' and I said,' I will pay you the $50, and see my attorneys.' Q. When was that? A. In August. Q. 1907? A. This year. Q. I am talking about 1907. Did you and Sam Williams and Mr. Purdy have a settlement on the 10th day of October, 1907? A. A settlement for what? Q. Consideration of that deed of August 9th? A. No, sir; he never paid me any money but the $50, and I will stay by that."

By Act Cong. April 26, 1906, ch. 1876, 34 Stat. 144, it is provided:

"And every deed executed before, or for the making of which a contract or agreement was entered into before the removal of restrictions, be and the same is hereby, declared void."

An "agreement" within the meaning of the foregoing provision is defined as:

"A coming together of parties in opinion or determination; the union of two or more minds in a thing done or to be done; a mutual assent to do a thing." Carter v. Prairie Oil & Gas Co., 58 Okla. 365, 160 Pac. 319.

The only testimony adduced at the trial relative thereto establishes conclusively every element of an agreement made between plaintiff and Purdy, while restrictions existed upon the alienation of her surplus lands, that she should convey the same to him and be paid the consideration therefor when such restrictions were removed; and to effectuate this agreement the deeds of March 2, July 1, and August 9, 1907, were executed. The first two of these deeds were executed before the removal of restrictions, and admittedly are void for that reason alone; and the third, designed to the same end, and executed as a part of the same transaction immediately upon the law permitting the alienation of such lands becoming operative, was clearly a deed "for the making of which a contract or agreement was entered into before the removal of restrictions," and is likewise inefficient to convey title and void. If the deeds from plaintiff to Purdy were void, the Diesels, as purchasers from him, of course could take no title.

The doctrine announced in Carter v. Prairie Oil & Gas Co., supra, is determinative of this case. Therein it was held:

"A citizen of the Creek Nation received $300 of the recited consideration of $3,600, and on July 2, 1907, prior to the removal of her restrictions, made, executed and delivered a deed to a part of her allotment, void under section 19 of an act of Congress approved April 26, 1906. At the same time she took back from the grantees therein their two promissory notes, one for $1,700, payable August 9, 1907, the other for $1,600, payable August 9, 1908, and agreed to meet them at the same place on August 9, 1917, which she did. There on that day, her restrictions in the meantime being removed by operation of law, they took up both notes, paid her the note for $1,700, and took from her another deed for the same land, which recited the same consideration, and that $2,000 of it was that day cash in hand paid, and executed and delivered to her their note for $1,600, payable one year thereafter. Held that, although executed at different times, both deeds were evidence, or part of one and the same transaction, and should be construed together, and that, the first deed being void as in fraud of the statute, not only in that for the making of which an agreement was entered into before the removal of restrictions, but in that a part of the consideration of the first entered into the consideration for the second deed, the taint of illegality in that deed tainted the second,

and that both are void. Held, further, that, being void, the subsequent purchaser of the land took no title.

"As 'transaction' is derived from the Latin words 'trans,' meaning across, and 'agere,' to drive, evidence examined, and held, that the transaction here involved was putting, or driving across the title to the land from plaintiff to the defendant grantees, and that the two deeds executed for that purpose were evidence or part of that transaction, and should be construed together, not only to determine what the contract or agreement evidenced thereby was, but with what intent it was made."

It is urged by defendants in error that the rule announced in Henley v. Davis, 57 Okla. 45, 156 Pac. 337, applies and should govern this case. Not so. The conveyances held to be valid and binding in Henley v. Davis, McKeever v. Carter, 52 Okla. 360, 157 Pac. 56, and Welch v. Ellis, 63 Okla. 158, 163 Pac. 321, were executed subsequent to the taking effect of the act of Congress approved May 27, 1908 (35 Stat. 312, ch. 199), which was a revising act intended as a substitute for all former legislation relative to restrictions upon alienation of lands allotted to the members of the Five Civilized Tribes and operated to repeal the provisions of the act of April 26, 1906, supra; while here, as in the case of Carter v. Prairie Oil & Gas Co., the conveyances involved were executed during the time the provisions of the act of April 26, 1906, were in full force and effect.

The pleadings here are in all essential particulars the same as those in Carter v. Prairie Oil & Gas Co., and upon the authority of that case this cause must be treated as one of purely equitable cognizance, where neither party is entitled as a matter of right to a trial by jury. We have reviewed evidence introduced on behalf of plaintiff, and hold that the judgment of the trial court sustaining the demurrer thereto is clearly opposed to such evidence and is contrary to the law.

The judgment is therefore reversed, and the cause remanded for such further proceedings as justice and equity may require consistent with the views herein expressed.

By the Court: It is so ordered.