In the Matter of the Estate of EDNA B. MOORE, Deceased.

Surrogate's Court, New York County, December 24, 1937.

Hill, Lockwood & Redfield [Joseph M. Proskauer and Charles Looker of counsel], for the Guaranty Trust Company, petitioner.

Cohen, Cole, Weiss & Wharton [Walter H. Pollak, Louis S. Weiss and Sydney A. Wolff of counsel], for the respondent Raymond W. Moore, husband of decedent.

Winthrop, Stimson, Putnam & Roberts [Allen T. Klots, John F. Meck, Jr., and E. Tinsley Ray of counsel], for Alice T. Crunden, daughter of decedent, respondent.

FOLEY, S. The executor under the last will of Edna B. Moore petitions in this proceeding for a determination as to the validity and effect of the election of Raymond W. Moore, the husband of the testatrix, to take against her will. The proceeding is brought under the provisions of section 145-a of the Surrogate's Court Act, which authorize a method of review of the right of a surviving

spouse to elect to take the statutory share under the terms of section 18 of the Decedent Estate Law. All of the parties interested in the estate have been cited in the proceeding.

Mrs. Moore died on October 1, 1936. The probate of her will was contested by her husband. A compromise was negotiated and the will admitted. In addition to a cash settlement made with him as consideration for the settlement of the contest, the arrangement between the parties provided for the setting aside of a further sum of $68,000. If it was determined by the court that he had a right of election, the amount of the reserve fund is to be paid to him. If it was determined that no right of election existed the reserve fund is to pass under the terms of the will to the residuary legatees.

Mrs. Moore left a gross estate of approximately $750,000. She was married to Raymond W. Moore on May 17, 1935. At that time she was about sixty years old. He was forty. They had met about the year 1928 in Dennis, Cape Cod, Mass., where she spent her summers. He was engaged in the presentation of theatrical performances in that place. She had been previously married. Her former husband had died. By him she had three daughters, who survived her. In her will the testatrix made certain bequests by way of outright legacies and directions to pay fixed annual amounts to named persons. She gave the income of a trust fund of $100,000 to her husband for his life with remainder to her residuary legatees. She gave the residue to her three daughters.

The relationship of the testatrix and her husband is rather exceptional. After their marriage they maintained separate residences, although they appear to have taken various trips and sojourned together from time to time. She continued to be known as Mrs. Tweedy, her first marriage name. Before her marriage to Mr. Moore, and in the period from 1929 to the end of 1934, she made gifts to Mr. Moore aggregating $517,000. From January 1, 1935, to the date of her death on October 1, 1936, she gave him additional sums, in total, $112,000. The aggregate amount received by him in her lifetime was, therefore, $629,000. He received by way of settlement of the probate contest $104,000. In all he has obtained $733,000 of Mrs. Moore's property. The validity of the gifts made by her in her lifetime has not been questioned by her executor or legatees.

The present controversy arose because of a document which he executed on May 24, 1935. That document reads as follows: " The right of election to take against any Last Will and Testament executed by my wife, Edna Bradley Moore, pursuant to the pro-

visions of section 18 of the Decedent's Estate Law of the State of New York, as amended by Laws of 1929, Chapter 229, is hereby waived. In Witness Whereof, I, the undersigned, husband of the above named Edna Bradley Moore, do hereby set my hand and seal this 24th day of May, 1935. (Signed) Raymond W. Moore (Seal)." Attached to the instrument was a formal acknowledgment before a notary public. The instrument was delivered to Mrs. Moore's attorney, Mr. Robert L. Redfield. The circumstances surrounding the execution of the instrument were testified to by Mr. Redfield. On the day of the execution, Mr. Moore came to Mr. Redfield's office in New York city. Mr. Redfield told him that in view of the benefactions which he had received from his wife and what he might get from her on her death, " I think you ought to waive your right to take against her will." He further stated that she was willing to sign a waiver of her right to take against the provisions of any will that Mr. Moore might make. He suggested to Mr. Moore that the latter have his attorney draft a formal waiver which Mrs. Moore would execute. In answer to these statements Moore replied, " That suits me perfectly because I have some valuable theatrical property in Dennis, Massachusetts, that I would like to devote to public charitable purposes and I know I could not do that unless she waived her right to take against my will." Mr. Redfield then stated, " If you feel that way about it, will you read this paper? " The waiver had been previously prepared. After it was read Moore said, " That is entirely satisfactory." He thereupon signed it and acknowledged it before a notary. Mr. Redfield then asked him whether he would have his attorneys prepare the form of the similar waiver which Mr. Moore would like his wife to sign. Moore replied that he was going to the country in a day or two and would not be back until September. He said that he did not intend to make a will between now and then, and that on his return Mr. Redfield would hear from him. In the fall of that year he executed his will, dated September 26, 1935. At his request Mrs. Moore waived her right to take against that will by an instrument dated October 30, 1935. She also, at his request, executed other waivers as to two later wills executed by him during the period up to her death on October 1, 1936.

The terms of section 18 of the Decedent Estate Law expressly include a provision which permits the waiver of a right of a surviving spouse to take against a will of the other spouse by formal document. Subdivision 9 of the section, at the time of the execution of the waiver by Mr. Moore, read: " The husband or wife during the lifetime of the other may waive the right of election to take against a particular last will and testament by an instru-

ment subscribed and duly acknowledged, or may waive such right of election to take against any last will and testament of the other whatsoever in an agreement so executed, made before or after marriage. An agreement so executed made before the taking effect of this section wherein a spouse has waived or released all rights in the estate of the other spouse shall be deemed to release the right of election granted in this section." It will be noted that the section refers to an " instrument " as the form of waiver to be executed against a *specific* will, and employs the word " agreement " in reference to the form of the paper to be employed as a waiver of the right to elect against *any* will. The chief reliance of counsel for the husband as sustaining his right to elect, in the face of the formal waiver executed by him, is the alleged distinction between these two terms. By highly refined, technical and tenuous arguments it is asserted that the word " agreement " in the statute compels the making of a complete contract, that both husband and wife are required to execute the single instrument, and that the complete terms of the arrangements between the parties and the actual consideration must be set forth. These contentions are overruled.

The history of the preparation of the section by the Decedent Estate Commission, its original enactment by the Legislature in 1929, and the subsequent amendment made in 1930, all negative the interpretation of its terms urged by counsel for the husband here. When the section was originally enacted it provided that the election to take against any will might be made in " an agreement of settlement * * *, made before or after the marriage." In the following year the Decedent Estate Commission recommended to the Legislature the elimination of the words " of settlement," so that the form of the instrument remained by statutory direction merely an agreement. Recommendation was also made to add a new sentence at the end of the subdivision which appears in the language quoted above. The purpose of this new sentence was to give legal recognition to an agreement by which a husband or wife had waived all rights in the estate of the other spouse in an instrument executed *before* September 1, 1930. The change of the form of the subdivision from an " agreement of settlement " to a mere " agreement " of any kind is significant in the solution of the controversy here. It is illuminative of the intent of the Decedent Estate Commission which recommended it and of the Legislature which enacted it, to authorize a form of instrument other than an ante-nuptial or post-nuptial agreement of settlement. The footnote printed in the legislative bill indicates the broadened scope of the document to be employed. The waiver might be embodied

in a trust deed executed by the husband or wife for the benefit of the other, or in a separation agreement, or in any other form of agreement. Cases were visualized where either spouse might before or after marriage waive his or her rights to take against any will without any consideration. Either might possess an independent fortune. In such case the husband might be entirely willing to permit the wife to dispose of her own property as she pleased. The wife might be willing to do likewise. Joint execution of the agreement was never contemplated. The husband might be willing to waive his right to take against any will of his wife. A single instrument executed by him alone would be sufficient. Her right to take against any will of his might thus be preserved. In other words, both could arrange for the disposition of the property of either by a joint agreement, or by an ante-nuptial agreement, or by a separation agreement, or by a trust deed or by an agreement in the form of a release, such as is presented in the pending proceeding, signed by one of the spouses only. The word used in the subdivision comprehends and includes many other forms of agreements unnecessary to specify here. Essentially the term applies to an agreement on the part of the party surrendering the right, and his or her signature only is sufficient.

Again, the word must be inferred to have been used in the statute in the sense that is customarily employed in the nomenclature of the law of estates. There are many forms of such agreements constantly presented for consideration in the Surrogates' Courts and considered in the decisions of this court and the appellate courts. None of these instruments is required to be signed by all of the parties involved in the estate or even by two parties where the transaction is limited to that number. This group of instruments is composed of agreements to assign legacies or interests in estates specifically mentioned in section 32 of the Personal Property Law under the article of that statute entitled " Agreements in writing." Again, there are agreements to renounce legacies, agreements to waive a fiduciary's commissions, agreements releasing fiduciaries from liability to account or approving a specific account and waiving its judicial settlement (Surr. Ct. Act, § 251), agreements releasing the surety on the bond of a fiduciary, agreements as to gifts and donations, agreements by a creditor relinquishing a claim against an estate or compromising such a claim. It should be noted also in the majority of these forms of relinquishment and releases the instrument signed by the party surrendering the right to litigate seldom states the consideration paid in money or property. Nevertheless, they are supported in the courts as valid and effective.

The contention of counsel for the husband that cases determining the sufficiency of a memorandum required under the Statute of Frauds are controlling, finds no support in the language of section 18 of the Decedent Estate Law. Equally untenable is his claim that the circumstances surrounding the transaction or oral testimony as to the true occurrences which lead to the making of the waiver cannot be received in evidence because they are rejected under the Statute of Frauds. In *Matter of Cook* (244 N. Y. 63) Judge CRANE considered and sustained the validity of an agreement made in the lifetime of the decedent by one of her prospective next of kin to relinquish her right to contest the will. The surrounding circumstances were proven, and an exchange of written communications between the decedent and her relatives took place. The validity of the executed release of the right to attack the will was sustained. The reasoning and conclusion of the court there are extremely pertinent: " Do the letters and the papers signed by Mrs. Cook's relatives, wherein they state that they will not contest her will upon the receipt of an advanced payment, in reality amount to agreements that they will make no further claim upon her estate? We think they do. No form of words is necessary to make out such an agreement. The intention must be gathered from all the surrounding circumstances and the writings interpreted according to the purpose which the parties had in mind. * * * Every consideration of justice would demand that such an agreement, fairly and openly made *while the testatrix was alive,* and relied upon in disposing of her property, should be supported." (Italics mine.)

A person may waive any right that he has whether secured to him by contract, conferred upon him by statute, or guaranteed him by the Constitution except in a case where public policy intervenes. (*People ex rel. McLaughlin* v. *Police Commissioners*, 174 N. Y. 450, 456; *Matter of Cooper*, 93 id. 507; *Baird* v. *Mayor*, 74 id. 382.) In *Amherst College* v. *Ritch* (151 N. Y. 282, at pp. 338, 349) it was held that the next of kin had validly released their rights to question a charitable gift in excess of one-half of the estate.

I find no intent whatsoever to limit the word " agreement " in the statute to a formal contract executed by both spouses. " The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view today." (CARDOZO, J., in *Wood* v. *Duff-Gordon,* 222 N. Y. 88, 91.) Cases may arise where fraud or imposition or coercion or duress may be proven to have been exercised in the procurement of an agreement to relinquish a right of election.

The courts have adequate power in such cases to protect the rights of the spouse executing the paper and to decree its invalidity. No charge of any such infirmity or of imposition is made by the husband here. He did not even take the witness stand to contradict Mr. Redfield's version of the transactions leading up to his signing of the waiver. Moreover, he took advantage of Mrs. Moore's promise to execute a waiver to any will which he subsequently executed by sending to her through his attorneys three separate forms of waivers to three subsequent wills executed by him. She executed and returned all of them. In none of these wills was his wife mentioned as a beneficiary. His disposition provided for his own relations and for his favorite dramatic art project. It has been stated that he actually received $103,000 of gifts after the execution of his waiver, of which at least $48,000 was in cash. In the face of this display of generous bounty by his wife and her own unselfishness in making impossible any claim by her against his estate, it is inconceivable that any distorted construction of the statute should be permitted to assist him in repudiating, after his wife's death, his solemn written obligation. The law is reasonable in its demands, and no unreasonable intendment should be read into a statute by which an injustice may be worked or an absurd result produced. (*Matter of Wagner*, 119 N. Y. 28, 35.)

The attention of the court has been called by counsel to the decision in *Mosby* v. *Chapin* (217 Ill. App. 442), where the husband waived his rights in the estate of his wife by an instrument under seal. Although the statutory right of election exists in that State, it does not appear that there was any express provision in the statute for a waiver of the right by instrument or agreement as required by the law of our State. The waiver was, nevertheless, sustained as valid. The waiver in that case being under seal was presumed to be based upon a valuable consideration. The situation of the parties and the surrounding circumstances leading up to the execution of the paper were presented in the evidence. Both spouses were dead when the case came on for determination. The court said: "Where the mouths of the contracting parties are closed by death, the acts and dealings of such parties in regard to the subject-matter of the supposed contract may be properly resorted to to determine the contemporaneous constructions and understanding of such parties as to its terms."

Finally, the provisions of section 18 were enacted for the liberal purpose of protecting a spouse against disinheritance. (*Matter of Byrnes*, 260 N. Y. 465, affg. 141 Misc. 346.) Safeguards were supplied to prevent a delinquent husband or wife from obtaining these benefits. The rights granted by the section might be waived

by an instrument as to any single will and by an equally simple form of instrument against any will. Oral agreements to waive were prohibited. The written waiver, whether it related to a specific testament or to any will, was required to be signed and acknowledged. Further than that, the statute imposed no specific conditions. Inadequacy of consideration, fraud or imposition could be dealt with by the courts under the principles of law generally applying to estates. The terms of the section are not to be perverted to permit a person of designing disposition, who has signed away his rights, to escape the effect of the instrument made by him. " Ordinarily, the signor of a deed or other instrument, expressive of a jural act, is conclusively bound thereby. That his mind never gave assent to the terms expressed is not material. (Wigmore on Evidence, § 2415.) If the signor could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him." (*Pimpinello* v. *Swift & Co.*, 253 N. Y. 159, 162, cited in *Matter of Stone*, 272 id. 121.)

The husband of the decedent is barred from any right of election to take against her will.

Tax costs and submit decree on notice accordingly.