In the Matter of the Estate of JOHN J. McGLONE, Deceased.

Surrogate's Court, Kings County, June 12, 1939.

*Orr & Brennan* [*Philip Zierler* of counsel], for the Irving Trust Company and Thomas F. McGlone, Jr., as executors, etc., petitioners; and for Thomas F. McGlone and Rose Meredith, residuary legatees.

*Andrew F. Van Thun*, for Helena Day McGlone, widow.

*George A. Voss*, for Ignatius V. McGlone, legatee.

*George A. Voss*, special guardian for Edward McGlone and Robert McGlone, infant remaindermen.

WINGATE, S.  In view of the earnest and repeated efforts of the petitioners to defeat the present widow's right of election without a hearing on the merits (*Matter of McGlone*, 166 Misc. 636; 169 id. 498; affd., 256 App. Div. 1074), the actual trial of the issues appeared as something of an anti-climax.

No testimony was introduced, the composite showing being the introduction into evidence of three documents, namely, *first*, a stipulation amending the answer of the widow so as to admit her subscription and delivery of the paper upon which her opponents rely to defeat her rights; *second*, the paper itself; and *third*, a certified copy of the marriage certificate of the parties, showing the consummation of their marriage on February 4, 1922. Finally, a stipulation was entered on the record that the asserted renunciation or waiver by the present widow of rights in the estate of her husband was not in her handwriting but in that of some other unidentified individual and that the only portion thereof which was written by her was the signature.

It follows, both sides having rested, that the issue raised by the executors to the effect that the widow is precluded from exercising her asserted right of election must be determined on this meagre demonstration and on the showing of the record, consisting preponderantly of the allegations of the petition in so far as they are not denied.

In view of the denials of paragraphs seventh to eleventh of the petition except for the admission in paragraph two of the answer that the widow signed and delivered to the decedent the alleged waiver, and the failure to introduce any evidence in support of the

allegations therein made, they must, except for the noted admissions, be excluded from consideration in the evaluation of the composite situation.

As thus reduced to lowest terms, the record demonstrates that the parties validly intermarried on February 4, 1922. Two days prior to the solemnization of the nuptials, the present widow signed and turned over to the decedent a document which had not been prepared by her, and " knowledge of the nature, terms and effect " of which she denies. This document reads as follows:

" I, Helena Day Snyder, being of sound mind and in possession of all my faculties, on the eve of my marriage to John J. McGlone, in London, England, on February, 4th, 1922, wish to record, of my free will, that, as I already possess, in my own right, ample of this world's goods in the way of a fortune of my own, as a compliment to my aforesaid husband, and for other good and sufficient reasons, I hereby, voluntarily and irrevocably, renounce all right, title and interest I might, legally or otherwise, have in any estate, real or personal, of which my said husband to be, John J. McGlone, might die seized.

" HELENA DAY SNYDER."

The decedent died a resident of this county on February 22, 1937, survived by the widow, a sister, two brothers and three nephews, sons of deceased brothers, as his only statutory distributees. His estate, as valued in the estate tax proceedings, of which this court may take judicial notice (*Matter of Surpless*, 143 Misc. 48, 50; *Matter of Morningstar*, Id. 620, 623; *Matter of Blake*, 146 id. 780, 781, 782; *Matter of Goldowitz*, 153 id. 182, 184; *Matter of Greenberg*, 158 id. 446, 448; *Matter of Reilly*, 165 id. 214, 218; *Matter of Grube*, 7 N. Y. Supp. [2d] 794, 798, not otherwise reported), amounted to $236,852.74.

His will was executed on August 21, 1930, and a codicil thereto was dated on July 6, 1934. Both were admitted to probate in this court on April 8, 1937. By reason of the execution of the codicil subsequent to August 31, 1930, the composite testamentary disposition is brought within the purview of section 18 of the Decedent Estate Law (*Matter of Greenberg*, 141 Misc. 874, 880, 881; affd., 236 App. Div. 733; affd., 261 N. Y. 474), with the result, since the valid inception of the marriage is both demonstrated and admitted, that the widow is presumptively entitled (*Matter of Green*, 155 Misc. 641, 649; affd., 246 App. Div. 583; *Matter of Vogel*, 251 id. 741) to receive a testamentary benefit, at least partly in cash and the balance on a life trust, amounting to $118,426.37. (Dec. Est. Law, § 83, subd. 4; § 18, subd. 1 [a].) The testamentary instruments, as probated, gave her a general legacy of $2,000 and no more.

In view of the noted presumption which arises by reason of the demonstration of the valid marriage between the parties, the burden is imposed upon those contending for a contrary result to show some legal reason why the right of election accorded by section 18 of the Decedent Estate Law and asserted by the widow should not be effectuated. By reason of the composite demonstration it is presently immaterial whether this burden is one of proof or merely of going forward.

Since the right of election accorded to a surviving spouse by section 18 is absolute except as expressly conditioned by the terms, of the section, the burden is imposed upon the petitioners who seek a determination that such right is not possessed by this widow to demonstrate the existence of some exception in the statute which has the effect of depriving her of its benefits. They point for this purpose to subdivision 9 of section 18, which reads

" 9. The husband or wife during the lifetime of the other may waive the right of election to take against a particular last will and testament by an instrument subscribed and duly acknowledged, or may waive such right of election to take against any last will and testament of the other whatsoever in an agreement so executed, made before or after marriage. An agreement so executed made before the taking effect of this section wherein a spouse has waived or released all rights in the estate of the other spouse shall be deemed to release the right of election granted in this section."

Two matters are notable in the language employed in this section. The first is that the only variety of document which, under its language, is declared effective to bar the elective right of the surviving spouse is one which is " subscribed and duly acknowledged." This requirement is prescribed whether such document be " an instrument " required for waiver of the right to elect against an identified will, or " an agreement " prescribed as prerequisite if all rights of the surviving spouse in their entirety are to be relinquished. In other words, this requirement of acknowledgment is expressly stipulated in respect of each of the three varieties of documents contemplated in the section, namely, the " instrument " of waiver against a single identified will, the " agreement " of waiver against any will which is executed after the effective date of the statute, and the " agreement " of waiver or release executed prior to the effective date of the statute.

According to the terms of the subsection it is only a document of this particular description and presenting this prescribed characteristic which will be effective for the purpose of depriving the surviving spouse of the enlarged statutory rights of participation in the estate of her deceased husband accorded her by section 18.

In view of the remedial nature of the legislation effected in this enactment as a whole and the liberal interpretation of its terms in favor of the enlarged rights of the survivor which has continuously been practiced and enjoined (*Matter of Byrnes*, 260 N. Y. 465, 474; *Rubin* v. *Myrub Realty Co., Inc.*, 244 App. Div. 541, 544; *Matter of Greenberg*, 141 Misc. 874, 885, 886; affd., 236 App. Div. 733; affd., 261 N. Y. 474, 479; *Thompson* v. *Thompson*, 163 Misc. 946, 950; affd., 254 App. Div. 601; *Matter of Moore*, 165 Misc. 683, 690; *Matter of Collins*, 156 id. 783, 785; *Matter of Brown*, 153 id. 282, 287; *Matter of Harris*, 150 id. 758, 760, 761; *Matter of Simeone*, 141 id. 737, 746), it seems apparent that any document should be subjected to strict scrutiny which is tendered in support of a contention that the relief made available for spouses in general, may not be claimed by the particular spouse whose rights are in question.

The present document does not comply with the specification of the statute which is applicable in this regard, namely, that the rights of a surviving spouse may be foreclosed only by an " agreement " " subscribed and duly acknowledged," since this instrument is not acknowledged. The opponents of the widow contend, however, that if the statute be interpreted as invalidating this instrument, it must be held to be in contravention of article 1, section 10, paragraph 1, of the United States Constitution and, therefore, void. The inhibition thus raised is, of course that " No State shall * * * pass any * * * Law impairing the obligation of contracts."

The question is accordingly presented as to whether this unilateral declaration granting for purposes of argument its validity for any purpose, is a contract within the contemplation of the Federal Constitution.

In *Louisiana* v. *Mayor of New Orleans* (109 U. S. 285, 288) and again in *Morley* v. *Lake Shore R. Co.* (146 id. 162, 170) the United States Supreme Court said: " The term ' contract ' is used in the Constitution in its ordinary sense, as signifying the agreement of two or more minds, for considerations proceeding from one to the other, to do, or not to do, certain acts. Mutual assent to its terms is of its very essence."

To this may be added the statement by the same tribunal in *Edwards* v. *Kearzey* (96 U. S. 595, 599, 600): " A contract is the agreement of minds, upon a sufficient consideration that something specified shall be done, or shall not be done."

It is obvious from these statements that in constitutional issues the concept of a contract is precisely the same as in ordinary litigations. The two indispensable essentials are an agreement or " meeting of the minds " of the contracting parties and a considera-

tion moving to the person against whom enforcement of the asserted agreement is sought. Without these two elements no contract can be demonstrated to exist and no constitutional question may arise.

" The prohibition of the Federal Constitution was intended to secure the observance of good faith in the stipulation of parties against any State action. Where a transaction is not based upon any assent of parties, it cannot be said that any faith is pledged with respect to it; and no case arises for the operation of the prohibition." (*Louisiana* v. *Mayor of New Orleans*, 109 U. S. 285, 288.)

" No matter what the actual motive may have been, by the express or implied terms of the supposed contract, the promise and the consideration must purport to be the motive each for the other, in whole or at least in part. It is not enough that the promise induces the detriment or that the detriment induces the promise if the other half is wanting." (*Wisconsin & Michigan R. Co.* v. *Powers*, 191 U. S. 379, 386.)

The document here in question does not purport to constitute a contract or agreement. It is a declaration of purpose and intention by the prospective bride only. Not only is no promise made by her but no consideration is expressed or implied. It is closely analogous to those situations which have repeatedly been litigated and in which the uniform determination has been made that no contract was consummated, in which a State has announced a given policy, later reversed, upon which individuals have sought to predicate contract rights. Respecting such a situation, Mr. Justice HOLMES writing for the unanimous court said in *Wisconsin & Michigan Ry. Co.* v. *Powers* (191 U. S. 379, 386), " the presence or absence of consideration is an aid to construction in doubtful cases — a circumstance to take into account in determining whether the State has purported to bind itself irrevocably or merely has used words of prophecy, encouragement or bounty, holding out a hope but not amounting to a covenant."

Here there is no promise — merely a declaration of intention. There is also no consideration either recited or demonstrated. In attempted avoidance of this difficulty, the petitioners urge that the decedent married the present widow and that marriage has been held to constitute a valid consideration. Granting both premises, there is no inference on the record that the marriage two days later was viewed by the parties as a consideration for the declaration. It is primary that nothing may be deemed a consideration which is not so considered by both parties. (*Walton Water Co.* v. *Village of Walton*, 238 N. Y. 46, 51; *Beck* v. *Sheldon*, 259 id. 208, 211; *Edrington-Minot Corp.* v. *Garsson, Inc.*, 219 App. Div. 65, 67.)

" The fortuitous presence in a transaction of some possibility of

detriment, latent but unthought of, is not enough * * *. Promisor and promisee must have dealt with it as the inducement to the promise." (*McGovern* v. *City of New York*, 234 N. Y. 377, 389; *Walton Water Co.* v. *Village of Walton*, 238 id. 46, 51.)

Even had it been demonstrated in the present case that the parties considered the consummation of the marriage to be a consideration for the agreement by the bride-elect, of which there is not the slightest indication, this could not, on the showing of the record, supply the requisite consideration for an agreement by the widow since it is obvious that the parties had already agreed to inter-marry and it is elementary that an agreement to do an act which one is already obligated to perform, or actual performance thereof, does not supply an adequate consideration for a new agreement by the person in whose favor the obligation already exists. (*Carpenter* v. *Taylor*, 164 N. Y. 171, 177; *O'Meara Co.* v. *National Park Bank*, 239 id. 386, 399; *269 Canal St. Corp.* v. *Zurich General Accident & Liability Ins. Co.*, 226 App. Div. 516, 519; affd., 252 N. Y. 603; *Melnick* v. *Kukla*, 228 App. Div. 321, 324.)

It is obvious, therefore, that the document in question, not having been acknowledged, does not comply in this regard with the only variety of instrument which under subdivision 9 of section 18 of the Decedent Estate Law will be effective to bar the widow's right of election.

The infirmity of the document does not, however, terminate here. The subdivision expressly prescribes the particular variety of instrument which is requisite for a waiver of the rights of election of a surviving spouse against all wills or in situations in which it was executed prior to the effective date of the statute. In both such connections such instrument must be " an agreement." This term is a word of art possessing a well-defined and thoroughly established meaning in the law not only of this state but of every other common law jurisdiction.

An " agreement " is a mutual assent (*Rohr* v. *Baker*, 13 Ore. 350; 10 P. 627; *Jones* v. *Williams*, 139 Mo. 1; 40 S. W. 353, 367; *Richardson* v. *Clements*, 89 Penn. St. 503, 505; *United States* v. *Richards*, 149 Fed. 443, 451; *Carter* v. *Prairie Oil & Gas Co.*, 58 Okla. 365; 160 P. 319, 322; *Dixie Fire Ins. Co.* v. *Wallace*, 153 Ky. 677; 156 S. W. 140, 141; *Williams* v. *Diesel*, 65 Okla. 163; 165 P. 187, 188) or coming together in accord or meeting of the minds (*Leonard* v. *Marshall*, 82 Fed. 396, 399; *United States* v. *Richards*, 149 id. 443, 451; *Southern Surety Co.* v. *Phillips*, 181 Ark. 14; 24 S. W. [2d] 870, 872) of two or more parties (*Jones* v. *Williams*, 139 Mo. 1; 40 S. W. 353, 367; *Arnold* v. *Scharbauer*,

116 Fed. 492, 497; *Richardson* v. *Clements*, 89 Penn. St. 503, 505; *Carter* v. *Prairie Oil & Gas Co.*, 58 Okla. 365; 160 P. 319, 322; *Tucker* v. *Pete Sheeran Bro. & Co.*, 155 Ky. 670; 160 S. W. 176, 178; *Williams* v. *Diesel*, 65 Okla. 163; 165 P. 187, 188; *Southern Surety Co.* v. *Phillips*, 181 Ark. 14; 24 S. W. [2d] 870, 872) on a consideration. (*Arnold* v. *Scharbauer*, 116 Fed. 492, 497.) The term connotes a mutual obligation (*Benedict* v. *Pincus*, 191 N. Y. 377, 383, 384; *Moran* v. *Standard Oil Co.*, 211 id. 187, 197; *Davis* v. *Frank*, 102 Misc. 683, 684) and is synonymous with the word "contract." (*Durham* v. *Taylor*, 29 Ga. 166, 176; *Sage* v. *Wilcox*, 6 Conn. 81, 84; *Barnard* v. *Lancashire Ins. Co.*, 101 Fed. 36, 37; *United States* v. *Edgar*, 45 id. 44, 46; *Michael* v. *Kennedy*, 166 Mo. App. 462; 148 S. W. 983, 984; *Douglass* v. *Williams Art Co.*, 143 Ga. 846; 85 S. E. 993; *Moss* v. *Winston*, 218 Ala. 364; 118 So. 739, 740.) As is said in *Bingham* v. *Insurance Co. of North America* (74 Wis. 498; 43 N. W. 494, 495): "To constitute an agreement, the minds of both parties must meet. That means * * * that one can not make an agreement alone; that both must understand the agreement alike, and must assent to that agreement; or, to use the term the law uses in such a case, the minds of the parties must meet upon the subject of the agreement." (See, also, *White* v. *Allen Kingston Motor Car Co.*, 69 Misc. 627, 628.) Mutual assent and obligation are inherent in the legal conception of an agreement, wherefore purely unilateral action as in the giving of a quitclaim can never constitute an "agreement." (*Chamberlain* v. *Abrams*, 36 Wash. 587; 79 P. 204, 205.)

The present document does not purport to be even so much as a quitclaim. It is merely a unilateral statement of intention and is accordingly not an "agreement" within the well established connotation of the term.

Those seeking to profit at the expense of the widow contend, however, that when the Legislature twice employed this word of definite legal meaning it did not intend to use it in the sense in which it is habitually employed and designed merely to require a unilateral waiver. As authority for this position they tender *Matter of Moore* (165 Misc. 683). The court is familiar with this decision and despite its high regard for its distinguished author has already expressed its inability to concur in his view. (*Matter of Shapiro*, 154 Misc. 55, 58.)

That a waiver of the right to elect against a single identified will may be accomplished by a unilateral instrument is unquestionable because the Legislature has expressly so provided. In respect of a waiver against any will made either before or after the effective date of the statute, the Legislature has pointedly and with reitera-

:tion adopted a diverse provision phrased in language possessing a well established legal connotation and this court does not feel itself justified in holding that these expressly and, to its mind, deliberately chosen, diverse requirements are capable of being accorded a meaning identical with that aptly but differently described in respect of waiver of the right to elect against the provisions of an identified will.

As has hereinbefore been indicated the word "agreement" possesses a well defined meaning in the law and it is an established principle of statutory construction that in such a situation its technical connotation must be accorded to it in the absence of unmistakable demonstration of a contrary intention (*Perkins* v. *Smith,* 116 N. Y. 441, 448; *People* v. *Wainwright,* 237 id. 407, 412; *People ex rel. Hunt* v. *Lane,* 132 App. Div. 406, 407, 408; affd., 196 N. Y. 520) which is here absent.

In the opinion of the court, therefore, the document tendered for the purpose of defeating the elective rights of the widow is defective and invalid for that purpose both by reason of the fact that it is not acknowledged and because it is not the type of document, namely, "an agreement," which has been prescribed by the Legislature for the purpose.

In view of its inadequacy under the provisions of subdivision 9 of section 18 of the Decedent Estate Law and the fact that it does not constitute an enforcible contract or agreement at common law inhibiting the assertion of elective rights, its efficacy, if any, for the purpose of disinheriting the widow must be predicated upon the equitable doctrines of waiver or estoppel.

To establish waiver, it must be shown that there was a deliberate, informed abandonment of known rights (*Alsens American Portland Cement Works* v. *Degnon Contracting Co.,* 222 N. Y. 34, 37; *Draper* v. *Oswego County Fire Relief Assn.,* 190 id. 12, 16; *Ansorge* v. *Belfer,* 248 id. 145, 150; *Matter of Feldhus,* 165 Misc. 122, 123; affd., 254 App. Div. 902; affd., 280 N. Y. 568; *Matter of Heim,* 166 Misc. 931, 937; affd., 255 App. Div. 1007; *Matter of Miller,* 162 Misc. 563, 571; affd., 252 App. Div. 872.) Here there is no such demonstration. On the contrary no evidence has been introduced in support of the allegation, expressly denied by the widow, that at the time of its signature she had "knowledge of the nature, terms and effect" of the document. The petitioner has, therefore, failed to demonstrate a situation to which the equitable doctrine of waiver is applicable.

To constitute an estoppel against her, it must have been demonstrated that the testator altered his position in reliance on the document. (*Lawrence* v. *Brown,* 5 N. Y. 394, 401; *Jewett* v. *Miller,*

10 id. 402, 409; *Manufacturers' & Traders' Bank* v. *Hazard*, 30 id. 226, 230; *Continental Nat. Bank* v. *Nat. Bank of the Commonwealth*, 50 id. 575, 581; *Blair* v. *Wait*, 69 id. 113, 116; *Rothschild* v. *Title. Guarantee & Trust Co.*, 204 id. 458, 464; *Matter of Leverich*, 135 Misc. 774, 778; affd., on opinion of this court, 234 App. Div. 625.) Of any such situation the record contains not a scintilla of evidence.

The court, therefore, deems the document submitted in defeasance of the rights of the widow wholly nugatory on grounds entirely different from those upon which its former decisions denying judgment on the pleadings to the petitioners were predicated. (166 Misc. 636; 169 id. 498.) It bows to the superior authority of the Appellate Division of this department in its determination (*Matter of Rogers*, 250 App. Div. 26, 28) that in dealings between husband and wife or prospective spouses "there is no presumption of inequality either way from these relations merely," although it must confess to some difficulty in reconciling this position with the statements of the Court of Appeals in such cases as *Matter of Smith* (95 N. Y. 516, 522), *Pierce* v. *Pierce* (71 id. 154, 158); *Graham* v. *Graham* (143 id. 573, 580), *Marx* v. *McGlynn* (88 id. 357, 371) and *Matter of Putnam* (257 id. 140, 143). In any event, this portion of the rule of the case has now become immaterial in view of its further statement: "But when it appears *prima facie* that the parties have been dealing with each other under circumstances of inequality, then a presumption arises as against the husband, especially if the transaction has resulted in detriment to the wife."

Here the prospective wife, on the eve of her marriage, was induced to sign a document, not prepared by her, knowledge of the nature, terms and effect of which she denies, the effect of which is to deprive her, utterly without any intimation or semblance of consideration of rights of inheritance worth $116,426.37. If this demonstration is not a *prima facie* sufficient indication of inequality and overreaching on the part of the prospective husband to require his estate to come forward with some explanation demonstrating that no advantage was taken by him of the relationship which the Court of Appeals has on at least two occasions held to be one of confidence and justified reliance (*Pierce* v. *Pierce*, 71 N. Y. 154, 158; *Graham* v. *Graham*, 143 id. 573, 580) it would seem that the effect of subdivision 9 of section 18 of the Decedent Estate Law, as interpreted, has made it possible for a designing spouse or prospective spouse to nullify the entire beneficent purpose of the enactment with virtual impunity.

The court can not believe this to be the law. On the contrary, it conceives the correct doctrine to be that "The courts regard with rigid scrutiny an ante-nuptial contract which deprives her [the wife] of any prospective interest in the estate of her intended

husband, and especially is this required in a case where such relinquishment on her part is made without any provision for her support in case she survives him " (*Graham* v. *Graham*, 143 N. Y. 573, 580), and "that the courts require strict proof of fairness, when called upon to enforce an ante-nuptial contract against the wife, and especially when it is apparent that the provision made for the wife is inequitable, unjust, and unreasonably disproportionate to the means of the husband. *The rule undoubtedly is, that in such a case every presumption is against the validity of the contract, and the burden of proof is cast upon the husband, or those who represent him, in order to uphold and enforce the same as a valid and subsisting agreement.*" (*Pierce* v. *Pierce*, 71 N. Y. 154, 158.) (Italics not in original.)

For the reasons stated, the court determines that the present widow is entitled to assert and has validly claimed her right of election to take her intestate share in contravention of the terms of the will pursuant to the provisions of section 18 of the Decedent Estate Law.

Enter decree on notice, in conformity herewith.